CORRIGAN, J.
The Court of Appeals erroneously concluded that evidence of an unusual number of prior fires — each associated with property owned or controlled by defendant — was inadmissible in this arson case in which defendant was accused of intentionally starting a fire in his home. Because the evidence was not offered to prove defendant’s bad character or his propensity to act in conformity with a bad character, the trial court correctly concluded that MRE 404(b)(1) did not preclude admission of the evidence. Further, the trial court did not abuse its discretion by concluding *612 that the evidence was sufficiently probative to outweigh any danger of unfair prejudice under MRE 403. The Court of Appeals, like the dissent in this Court, incorrectly concluded that the lack of direct evidence that defendant intentionally set the past fires precluded or weighed against admission. To the contrary, as precedent of this Court has clearly established, defendant’s apparent lack of direct culpability weighed in favor of admission because it minimized impermissible negative inferences about his character. Indeed, the evidence was noncharacter evidence admissible under the theory of logical relevance known as the doctrine of chances. Accordingly, we reverse the May 5, 2009 opinion of the Court of Appeals,[1] reinstate defendant’s convictions, and remand to the Court of Appeals for that Court to consider defendant’s remaining arguments on appeal.
I. FACTS AND PROCEEDINGS
Defendant admitted that he was the only person present at his home just before it caught fire on the afternoon of November 13,2006. He left the premises to visit his brother shortly before the fire was reported by neighbors. After the fire, defendant filed an insurance claim seeking compensation for the damage to his home. The investigating police detective and a fire investigator for defendant’s insurer both concluded that the fire had been intentionally set and originated from a love seat in the living room. Accordingly, the prosecution charged defendant with arson of a dwelling house, MCL 750.72, and burning insured property, MCL 750.75. Defendant claimed that the fire was an accident likely caused by faulty electrical wiring.
*613 At trial, the prosecution showed that defendant had fallen behind on his mortgage payments and utility bills before the fire occurred. The prosecution also showed that defendant had been associated with four previous home or vehicle fires — each of which also involved insurance claims and arguably benefitted defendant in some way — in the 12 years preceding the charged fire. Specifically, defendant’s home caught fire in the spring of 2006, apparently as the result of a blanket being left on a kerosene heater. Defendant filed an insurance claim for the resulting smoke damage. In 2003, a van driven by defendant but owned by his employer caught fire. The prosecution argued that defendant had a motive to damage this van. The employer had recently transferred a newer van, previously issued to defendant, to another employee; it then issued the van that later caught fire, which was an older model, to defendant. After the older van burned, the employer was forced to replace it. In 2001, defendant’s own van caught fire and the fire spread to his mobile home. Defendant received an insurance payment for that van. Finally, in 1994, defendant’s truck caught fire, for which he submitted an insurance claim. Although none of these fires was established to have resulted from arson,[2] the prosecution argued that the pattern was probative to rebut defendant’s claim that he had not intentionally set the November 2006 fire.
The jury indeed concluded from all the evidence that defendant intentionally set the November 2006 fire. It convicted him, as charged, of arson of a dwelling house and burning insured property. The trial court sentenced defendant to concurrent prison terms of 3 to 20 years and 1 to 10 years.
*614 The Court of Appeals reversed, concluding that the trial court improperly admitted the evidence of previous fires under MRE 404(b)(1). The appeals panel concluded that this evidence was irrelevant, inadmissible, and improperly prejudicial. Accordingly, it remanded for a new trial.
The prosecution applied in this Court for leave to appeal the Court of Appeals decision. We granted leave and directed the parties to address
whether evidence provided under the “doctrine of chances” may be used to establish that a fire did not have a natural or accidental cause, and whether more than the mere occurrence of other fires involving the defendant’s property is necessary for admission of such evidence.[3]
II. STANDARD OF REVIEW
A trial court’s discretionary decisions concerning whether to admit or exclude evidence “will not be disturbed absent an abuse of that discretion.” [4] When the decision involves a preliminary question of law, however, such as whether a rule of evidence precludes admission, we review the question de novo.[5]
III. MRE 404(b)(1)
MRE 404(b)(1) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or *615 accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.
To admit evidence under MRE 404(b),[6] the prosecutor must first establish that the evidence is logically relevant to a material fact in the case, as required by MRE 401 and MRE 402, and is not simply evidence of the defendant’s character or relevant to his propensity to act in conformance with his character.[7] The prosecution thus bears an initial burden to show that the proffered evidence is relevant to a proper purpose under the nonexclusive list in MRE 404(b)(1) or is otherwise probative of a fact other than the defendant’s character or criminal propensity.[8] Evidence relevant to a noncharacter purpose is admissible under MRE 404(b) even if it also reflects on a defendant’s character. Evidence is *616 inadmissible under this rule only if it is relevant solely to the defendant’s character or criminal propensity.[9] Stated another way, the rule is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant’s character.[10] Any undue prejudice that arises because the evidence also unavoidably reflects the defendant’s character is then considered under the MRE 403 balancing test, which permits the court to exclude relevant evidence if its “probative value is substantially outweighed by the danger of unfair prejudice . . . .” MRE 403. [11] Finally, upon request, the trial court may provide a limiting instruction to the jury under MRE 105 to specify that the jury may consider the evidence only for proper, noncharacter purposes.[12]
IV THE DOCTRINE OF CHANCES
The doctrine of chances — also known as the “doctrine of objective improbability” — is a “ ‘theory of logical relevance [that] does not depend on a character inference.’ ”[13] Under this theory, as the number of incidents of an out-of-the-ordinary event increases in relation to a particular defendant, the objective probability increases that the charged act andjor the prior occurrences were not the result of natural causes. The doctrine is commonly *617 discussed in cases addressing MRE 404(b) because the doctrine describes a logical link, based on objective probabilities, between evidence of past acts or incidents that may be connected with a defendant and proper, noncharacter inferences that may be drawn from these events on the basis of their frequency. If a type of event linked to the defendant occurs with unusual frequency, evidence of the occurrences may be probative, for example, of his criminal intent or of the absence of mistake or accident because it is objectively improbable that such events occur so often in relation to the same person due to mere happenstance. To illustrate, United States v York[14] provides a classic description of the doctrine when used to negate innocent intent:
The man who wins the lottery once is envied; the one who wins it twice is investigated. It is not every day that one’s wife is murdered; it is more uncommon still that the murder occurs after the wife says she wants a divorce; and more unusual still that the jilted husband collects on a life insurance policy with a double-indemnity provision. That the same individual should later collect on exactly the same sort of policy after the grisly death of a business partner who owed him money raises eyebrows; the odds of the same individual reaping the benefits, within the space of three years, of two grisly murders of people he had reason to be hostile toward seem incredibly low, certainly low enough to support an inference that the windfalls were the product of design rather than the vagaries of chance.... This inference is purely objective, and has nothing to do with a subjective assessment of [the defendant’s] character)[15]
The seminal English case employing the doctrine, Rex v Smith,[16] acknowledged that evidence of past *618 alleged accidents may be admitted to show “whether the acts alleged to constitute the crime charged in the indictment were designed or accidental, or to rebut a defence [sic] which would otherwise be open to the accused.”[17] Rex v Smith infamously involved a defendant accused of drowning his wife in the bath.[18] The Court of Criminal Appeal concluded that the trial court properly admitted evidence that two other wives of the defendant were each similarly found dead in their baths from apparent accidental drowning.[19] Consistent with the modern rule, the court acknowledged that the prosecution generally may not
adduce evidence tending to shew [sic] that the accused has been guilty of criminal acts other than those covered by the indictment, for the purpose of leading to the conclusion that the accused is a person likely, from his criminal conduct or character, to have committed the offence [sic] for which he is being tried. On the other hand, the mere fact that the evidence adduced tends to shew [sic] the commission of other crimes does not render it inadmissible if it be relevant to an issue before the jury ... .[20]
Thus, the evidence that several of the defendant’s wives had drowned in their baths was properly admitted “for the purpose of shewing [sic] the design of the [defendant].”[21] The court also observed that the judge was appropriately “careful to point out to the jury the use they could properly make of the evidence.”[22]
The doctrine of chances is often similarly employed in cases alleging arson to argue that the fire at issue was *619 not an accident, but was intentionally caused by the defendant. Indeed, arguably the doctrine is epitomized in arson cases in which apparently accidental fires befall property linked to the defendant with uncommon frequency. As explained by Professor Edward Imwinkelried:
Based on ordinary common sense and mundane human experience it is unlikely that a large number of similar accidents will befall the same victim in a short period of time. Considered in isolation, the charged fire .. . may be easily explicable as an accident. However, when all similar incidents are considered collectively or in the aggregate, they amount to an extraordinary coincidence; and the doctrine of chances can create an inference of human design. The recurrence of similar incidents incrementally reduces the possibility of accident. The improbability of a coincidence of acts creates an objective probability of an actus reus. [1 Imwinkelried, Uncharged Misconduct Evidence (rev ed, March 2008 supp), § 4:3, pp 4-42 and 4-43.]
V APPLICATION TO THIS CASE
The fires here were admissible precisely because they constituted a series of similar incidents — fires involving homes and vehicles owned or controlled by defendant —the frequency of which[23] objectively suggested that one or more of the fires was not caused by accident. The Court of Appeals principally erred by incorrectly assum *620 ing that evidence of the past fires could only be admitted if the prosecutor proved that defendant intentionally set them or that they shared other special qualities or additional significant indices of similarity. Defendant and the dissent similarly err by concluding that, in the words of the dissent, Crawford, supra, established, as a general rule, that past incidents must be “sufficiently similar to the charged offense to warrant admission,” and that “Crawford makes it clear that similarity is a key factor in determining the applicability of the doctrine of chances.” These blanket conclusions are incorrect.
To the contrary, application of the doctrine of chances “varies with the issue for which it is offered.”[24] As with all arguments involving prior acts or events, the “method of analysis to be employed depends on the purpose of the offer and its logical relevance.”[25] The acts or events need not bear striking similarity to the offense charged if the theory of relevance does not itself center on similarity. As the VanderVliet Court explained:
“If we ask, does [the] misconduct have to exhibit striking similarity with the misconduct being investigated, the answer is, only if similarity is relied on. Otherwise not. There are only two classes of case[s] [those in which similarity is relied on and those in which it is not], and they do not depend on the nature of the evidence, but on the nature of the argument. ”[26]
Crawford, in which the Court stressed similarity, did not involve a series of purported accidents as here. Rather, there the prosecution offered evidence of a past *621 drug-related conviction centrally to prove the defendant’s mens rea or knowledge that drugs were concealed in the dashboard of his car.[27] Thus, the specific holding of Crawford is largely inapposite. The same holds true for the cases on which the Court of Appeals here relied in concluding that the prior fires were too dissimilar to be admitted: Sabin, supra, and People v Golochowicz, 413 Mich 298; 319 NW2d 518 (1982). Both these cases involved theories of relevance explicitly rooted in similarities between the past events and the crime charged. In Sabin, the prosecution “stressed the similarities between the charged incident [of the defendant’s sexual abuse of his daughter] and the [past sexual] abuse of [his] stepdaughter” in seeking admission of the past abuse.[28] This Court concluded that the past abuse was admissible only under the theory that the defendant employed a similar plan, scheme, or system in doing an act.[29] This theory of relevance requires that “the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system.”[30] Golochowicz, in turn, was a murder case in which the prosecution sought to admit evidence of a prior, similar assault in order to advance a “modus operandi theory to prove identity. ”[31] Golochowicz thus established a test for admission under such a theory that required substantial evidence that the defendant committed the prior act and some “special quality” of the act that tended to prove the defendant’s identity.[32]
*622 Here, to the contrary, the prosecution did not move to admit evidence of the past fires only on the basis of theories of logical relevance requiring a high degree of similarity to the charged fire. As we emphasized in VanderVliet while advancing a more flexible test than the one described in Golochowicz: “the Golochowicz approach to modus operandi cases to show identity is not a ‘conceptual template’ to ‘mechanically test’ all misconduct evidence barring use of other permissible theories of logical relevance.”[33] Rather, “[w]here the proponents’ theory is not that the acts are so similar that they circumstantially indicate that they are the work of the accused, similarity between charged and uncharged conduct is not required. ”[34] Different theories of relevance require different degrees of similarity between past acts and the charged offense to warrant admission. Thus, the “level of similarity required when disproving innocent intent is less than when proving modus operandi.”[35] “When other acts are offered to show innocent intent, logical relevance dictates only that the charged crime and the proffered other acts ‘are of the same general category.’ ”[36] Past events — such as fires in relation to an arson case — that suggest the absence of accident are offered on the basis of a theory of logical relevance that is a subset of innocent intent theories.[37] As such, the past events need only be of the *623 same general category as the charged offense. Professor Imwinkelried explained, in the context of arson cases:
Suppose that the defendant is charged with arson. The defendant claims that the fire was accidental. The cases routinely permit the prosecutor to show other acts of arson by the defendant and even nonarson fires at premises owned by the defendant. In these cases, the courts invoke the doctrine of objective chances. The courts reason that as the number of incidents increases, the objective probability of accident decreases. Simply stated, it is highly unlikely that a single person would be victimized by so many similar accidental fires .. . .[38]
Accordingly, here the Court of Appeals erred by basing its analysis on its conclusion that the past fires were not highly similar to the charged fire due largely to the lack of definitive proof that defendant intentionally set the past fires. Because defendant owned or controlled all the burned property,[39] the unusual number of past fires was classically relevant to defendant’s claim *624 that the November 2006 fire was an accident; the frequency of past fires so closely associated with defendant logically suggested a lack of coincidence. The defense theory in a case in part governs what evidence is logically relevant.[40] Indeed, as was the case in York, supra,[41] the “fact that [the] defense included innocent explanations” for acts surrounding his allegedly illegal activity actually “underscore^] the relevance” of the prior acts evidence.[42] In response to the defendant’s arguments that the prior acts were not sufficiently similar, the York Court opined that he was “looking at trees rather than the forest”; “when evidence is offered to prove intent, the degree of similarity is relevant only insofar as the acts are sufficiently alike to support an inference of criminal intent.... The prior acts need not be duplicates of the one for which the defendant is now being tried.”[43]
In sum, the past fires were logically relevant to the objective probability that the November 2006 fire was intentionally set. Thus, the fires were admissible to negate defendant’s claim that the fire was a mere accident.[44]
*625 Although defendant and the dissent emphasize that he offered innocent explanations for the past fires and other evidence tending to show that he had no motive to burn particular property, his innocent explanations do not control the admissibility analysis. For example, he claimed that the fire involving his employer’s van also destroyed defendant’s personally owned work tools. He also established that, although he turned on the kerosene heater involved in the spring 2006 house fire, his housemate admitted leaving the fire-causing blanket on the heater. He stressed that the 2001 fire involving his insured van spread to his mobile home, which was not insured. Further, he presented evidence that, after the 1994 fire that damaged his truck,[45] he nonetheless was required to keep making payments on the damaged truck despite obtaining the insurance proceeds. With regard to the November 2006 fire, defendant also presented an expert who opined that the fire began behind the love seat, thus implying that an electrical fault might have caused it; defendant also showed that the prosecution had not appointed an expert to test this wiring.[46]
But these explanations do not render evidence of the past fires inadmissible. Rather, the very function of the doctrine of chances is to permit the introduction of events that might appear accidental in isolation, but that suggest human design when viewed in the aggregate. Because the prosecution’s noncharacter theory for admission was sound, the evidence was admissible.[47] *626 Further, a jury may generally decide whether a defendant’s claim of innocence — here his claim that all five fires were accidental — is more credible or likely than the prosecution’s claim of guilt. The jury is the sole judge of the facts; its role includes listening to testimony, weighing evidence, and making credibility determinations.[48] Indeed, “a basic premise of our judicial system [is that] providing more, rather than less, information will generally assist the jury in discovering the truth.”[49] The weight to be given to admitted evidence is left to a properly instructed jury’s common sense and judgment.[50] On this point, I respectfully suggest that the dissent usurps the jury’s role by concluding that the previous fires were inadmissible because defendant received “little, if any, insurance money” or on the basis of the dissent’s rejection of the argument that defendant benefitted from the past fires. It is for the jury to decide whether defendant benefitted from the fires or might have anticipated benefitting without accurately predicting their ultimate impact on his property or finances.
The trial court could also take into account defendant’s claims of innocence with regard to the fires in *627 deciding whether evidence of the past fires was more probative than unduly prejudicial under MRE 403. But the court did not abuse its discretion in nonetheless admitting the evidence under this rule. The trial court is in the best position to make MRE 403 determinations on the basis of “a contemporaneous assessment of the presentation, credibility, and effect of testimony . .. .”[51] Accordingly, we review its decisions admitting or excluding evidence under a deferential standard and will reverse only if we identify “a clear abuse of discretion.”[52]
No such abuse occurred here. As explained above, first, the prior fires were highly, objectively relevant to defendant’s claim that all five fires, including the November 2006 fire, were mere accidents. Second, the amount of “unfair prejudice,” MRE 403, was minimal. “Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury.”[53] Thus, MRE 403 “does not prohibit prejudicial evidence; only evidence that is unfairly so.”[54] Here, there was minimal unfair prejudice — such as improper character implications — because any prejudice arose properly from the objective frequency of fires associated with property owned or controlled by defendant.[55]
Indeed, defendant’s insistence — echoed by the Court of Appeals and the dissent — that there was no proof he *628 intentionally caused the past fires actually weighs in favor of admission because, absent proof of past criminal intent associated with the evidence, the evidence does not create the traditional intermediate inference about character or criminal propensities associated with established, past criminal acts or convictions. Thus, the evidence stands in stark contrast to the proffered evidence in Crawford, supra, where the Court opined that the danger of unfair prejudice is prevalent when the jury “learns that a defendant has previously committed the same crime as that for which he is on trial” because the jury may therefore presume that he is likely to commit the same crime again because he is “a bad person, a convicted criminal. .. .”[56]
Indeed, the dissent’s approach here threatens to contradict this Court’s critical observation that MRE 404(b)(1) is “inclusionary rather than exclusionary”; “[t]here is no policy of general exclusion relating to other acts evidence.”[57] Justices of this Court have long been concerned that a misunderstanding of MRE 404(b)(1) would erode the rule’s proper application in this manner. Notably, in her Crawford dissent, Justice BOYLE — joined by Justices WEAVER and TAYLOR— concluded that the majority used an erroneous exclusionary approach when it barred evidence that appears significantly more unfairly prejudicial than the evidence here (because the evidence in Crawford revealed that *629 the defendant actually committed a crime in the past). She expressed concern that, [protestations to the contrary,” the Crawford majority went too far and effectively utilized the incorrect exclusionary approach.[58]
Finally, the trial court correctly instructed the jury to consider the evidence only for proper, noncharacter purposes pursuant to MRE 105. A limiting instruction generally “suffice[s] to enable the jury to compartmentalize evidence and consider it only for its proper purpose . . . .”[59]
VI. CONCLUSION
The trial court properly admitted evidence of the past fires, which were logically relevant particularly to rebut defendant’s claim that the November 2006 fire was a mere accident. The Court of Appeals erroneously held that a high degree of similarity between past acts or events and the crime charged is necessary in order for evidence of the past events to be admissible. To the contrary, precedent examining MRE 404(b) and the doctrine of chances clearly establishes that unusually frequent events — and particularly purported accidents — associated with the defendant and falling into the same general category of incidents are admissible to prove lack of accident or lack of innocent intent with regard to the charged event. Such evidence is particularly useful in arson cases where unusually frequent individual fires, which could appear to be accidents when viewed in isolation, may constitute the most probative objective evidence that the defendant intentionally set the fire underlying the arson charge.
*630 For these reasons, we reverse the Court of Appeals’ opinion, affirm the trial court’s evidentiary ruling, and reinstate defendant’s convictions. This case is remanded to the Court of Appeals for consideration of defendant’s remaining arguments on appeal.
We do not retain jurisdiction.
WEAVER, Young, and MARKMAN, JJ., concurred with Corrigan, J.

 People v Mardlin, unpublished opinion per curiam of the Court of Appeals, issued May 5, 2009 (Docket No. 279699).

 Not all of the fires were investigated by police or fire officials.

3 People v Mardlin, 485 Mich 870 (2009).

 People v McDaniel, 469 Mich 409, 412; 670 NW2d 659 (2003).

 Id.

 Although applying MRE 404(b)(1) to the facts of some cases has produced divisions among the justices of this Court in the past, we have unanimously confirmed that the opinions in People v VanderVliet, 444 Mich 52; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994), People v Crawford, 458 Mich 376; 582 NW2d 785 (1998), and People v Sabin (After Remand), 463 Mich 43; 614 NW2d 888 (2000), “continue to form the foundation for a proper analysis of MRE 404(b).” People v Knox, 469 Mich 502, 510; 674 NW2d 366 (2004).

 VanderVliet, 444 Mich at 60-61, 74.

 Crawford, 458 Mich at 385; VanderVliet, 444 Mich at 65-66. The prosecution, however, does not bear a “heightened” burden to “establishf] the theory of admissibility” nor does the prosecution’s “failure to identify at trial the purpose that supports admissibility requireD reversal.” Sabin, 463 Mich at 59 n 6. Rather, consistent with the notice requirement of MRE 404(b)(2), the prosecution must provide a “rationale for admitting the evidence ... to ensure that the defendant is aware of the evidence and to provide an enlightened basis for the trial court’s determination of relevance and decision whether to exclude the evidence under MRE 403.” Id. In part because all relevant evidence is admissible, MRE 402, unless evidence bears solely on a defendant’s character, MRE 404(b)(1), “[t]he prosecution’s recitation of purposes at trial does not restrict appellate courts in reviewing a trial court’s decision to admit the evidence.” Id. at 59 n 6; see also id. at 56.

 Crawford, 458 Mich at 385; VanderVliet, 444 Mich at 63-64.

 VanderVliet, 444 Mich at 64-65; see also Sabin, 463 Mich at 56. Indeed, MRE 404(b) is not even implicated if the prosecution seeks to introduce logically relevant evidence of other acts performed by the defendant if the evidence does not generate an intermediate inference as to his character. VanderVliet, 444 Mich at 64.

 Crawford, 458 Mich at 385; VanderVliet, 444 Mich at 74-75.

 Crawford, 458 Mich at 385; VanderVliet, 444 Mich at 75.

 Crawford, 458 Mich at 393, quoting Imwinkelried, Uncharged Misconduct Evidence, § 5:05, p 12.

 933 F2d 1343 (CA 7, 1991), overruled in part on other grounds Wilson v Williams, 182 F3d 562, 565 (CA 7, 1999).

15 Id. at 1350; see also VanderVliet, 444 Mich at 79 n 35, quoting York.

 See 11 Crim App Rep 229 (1915).

 Id. at 237 (citation and quotation marks omitted).

 Id. at 229.

 Id. at 229, 237.

20 Id. at 237 (citation and quotation marks omitted).

 Id.

 Id.

 Indeed, during voir dire the prosecutor asked the jurors if any of them had “experienced” a fire in their lifetimes. One juror had experienced one fire. In contrast, defendant experienced 5 fires in 12 years. Defendant’s association with burned property is certainly unusual. This association was thus probative of the credibility of defendant’s statements that the November 2006 fire was a mere accident or had natural causes because the unusually high occurrence of fires in relation to defendant’s property creates a permissible inference of human design. Ultimately, it was up to the jury to determine whether defendant simply is extraordinarily jinxed or had engaged in wrongdoing that caused some or all of the burned vehicles and houses.

 VanderVliet, 444 Mich at 79 n 35.

 Id. at 67.

26 Id., quoting Elliott, The young person’s guide to similar fact evidence — I, 1983 Crim L R 284, 288 (brackets in original).

 Crawford, 458 Mich at 394-397.

 Sabin, 463 Mich at 50.

 Id. at 61, 67-68.

 Id. at 63.

 See VanderVliet, 444 Mich at 66.

 Golochowicz, 413 Mich at 307-309.

 VanderVliet, 444 Mich at 67, quoting Golochowicz, 413 Mich at 314.

 VanderVliet, 444 Mich at 69 (emphasis added).

 Id. at 80 n 36.

 Id. at 79-80, quoting Imwinkelried, Uncharged Misconduct Evidence, § 3:11, p 23. We stress that, contrary to the dissent’s suggestions, we do not here invent the “same general category” requirement or the notion that different theories of relevance require different degrees of similarity among the proffered evidence. These concepts come directly from majority opinions of this Court.

 VanderVliet, 444 Mich 80 n 37.

38 1 Imwinkelried, Uncharged Misconduct Evidence (rev ed, March 2008 supp), § 4:1, pp 4-6 to 4-9 (emphasis added).

 Contrary to the dissent’s apparent fears, our acknowledgement that past events need only fall into the same “general category” under these circumstances does not extinguish the need for similarity to whatever extent similarity is relevant in a particular case. Here the fires were sufficiently similar or related because they each involved a home or vehicle that was under defendant’s control. It is not as if, for example, the prosecution sought to introduce evidence that an unusual number of fires occurred in the county where defendant lives without otherwise linking the fires to defendant in some way. In other words, although such fires would he of the same general category on some level, we do not suggest that they could he admitted without additional evidence linking them to the defendant. The dissent’s fears overstate the nature of our holding, which is perfectly consistent with cases such as Rex v Smith and United States v Woods, 484 F2d 127 (CA 4, 1973), where admission was appropriate because the past events were sufficiently similar to support a lack of accident theory (in Rex v Smith — the defendant’s wives apparently drowning accidentally in their baths at an unusual rate; in Woods — children cared for by the defendant apparently spontaneously *624 developing similar health conditions at an unusual rate; here — property controlled by defendant catching fire at an unusual rate).

 VanderVliet, 444 Mich at 75.

 As noted, York was cited with approval by VanderVliet, 444 Mich at 79 n 35.

 York, 933 F2d at 1350.

 Id. at 1351 (citations and quotation marks omitted; ellipses in original).

 Moreover, although more similarity among the fires was unnecessary for admission, arguably the fires were sufficiently similar to prove identity, motive, or that defendant acted consistent with a scheme or plan to burn property in order to gain a benefit for himself. Indeed, each fire resulted in an insurance claim that arguably benefitted defendant. Even the fire involving his employer’s van resulted in replacement of the burned van, which was an older model recently issued to defendant.

 The truck appears to have been, possessed and paid for by defendant, but owned by his father.

 Defendant’s claim that his trial attorney should have retained an expert to test the wiring before trial should be considered by the Court of Appeals on remand.

 Compare York, 933 F2d at 1350 (stating that the odds of particular events benefitting the defendant may be “low enough to support an *626 inference that the windfalls were the product of design rather than the vagaries of chance . .. [and] [t]his inference is purely objective, and has nothing to do with a subjective assessment of [the defendant’s] character’’) (emphasis added).

 People v Lundy, 467 Mich 254, 258 n 6; 650 NW2d 332 (2002).

 People v Anstey, 476 Mich 436, 457; 719 NW2d 579 (2006); see also Harvey v Horan, 285 F3d 298, 299 (CA 4, 2002) (“The American criminal justice system rightly sets the ascertainment of truth and the protection of innocence as its highest goals.”).

 E.g., CJI2d 2.4(2) (“You must think about all the evidence and all the testimony and then decide what each piece of evidence means and how important you think it is.”); CJI2d 2.6(2) (“In deciding which testimony you believe, you should rely on your own common sense and everyday experience.”).

 VanderVliet, 444 Mich at 81.

 Crawford, 458 Mich at 383.

 Id. at 398.

 Id.

 Moreover, even if one could conclude that the unfair prejudice issue creates a close question concerning whether the evidence should have been admitted under the MRE 403 balancing test, “[a]s we have often observed, the trial court’s decision on a close evidentiary question. .. ordinarily cannot be an abuse of discretion.” Sabin, 463 Mich at 67.

 Crawford, 458 Mich at 398 (emphasis added); cf. VanderVliet, 444 Mich at 64 (explaining that the general rule excluding mere character evidence reflected in MRE 404(b) is not even implicated if the evidence is logically relevant but does not generate an intermediate inference as to character).

 VanderVliet, 444 Mich at 64-65 (citation and quotation marks omitted); see also Crawford, 458 Mich at 390-391 n 8 (“VanderVliet embraced the ‘inclusionary’ approach to prior misconduct evidence”; “[t]he ‘inclusionaiy’ theory... recognizes the rule’s restrictive application to evidence offered solely to prove criminal propensity____”) (emphasis added).

 Crawford, 458 Mich at 400 (Boyle, J., dissenting).

 Id. at 399 n 16.