# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 23, 2015

Plaintiff-Appellee,

v

No. 320951
Midland Circuit Court
LC No. 12-005117-FH

JOHN JAMES BILLINGHIRE, JR.,

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and MURPHY and SERVITTO, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of two counts of fourth-degree criminal sexual conduct (CSC IV), MCL 750.520e. He was sentenced to serve one year in jail, and to pay a fine of $1,500. Defendant appeals as of right, and we affirm.

## I. BACKGROUND FACTS

Defendant was employed as the general manager of a restaurant in Midland. As manager, defendant interviewed and hired both of the victims: C.H. was hired as a server, and J.P., a minor, was hired to be a hostess and to bus tables. Both victims testified that during their employment interviews, defendant asked them inappropriate and sexually explicit questions. Once their employment began at the restaurant, defendant continued to make sexually inappropriate remarks to the victims while they were working. C.H. testified that defendant offered to take nude pictures of her to give to her husband, and J.P. testified that defendant asked her to help "break in" his bed during a "tour" of his apartment, which was above the restaurant.

The victims testified further that defendant touched them inappropriately while they were working. Both victims testified that defendant touched their buttocks on numerous occasions, usually in the presence of other people, but apparently in a clandestine manner. J.P. also testified that defendant once rubbed her breasts with his hand and asked her "how big" they were. Both victims testified that while they were on separate work assignments with defendant in a vehicle that defendant was driving, defendant placed his hand on their legs and touched their genital area over their clothing. Although both victims expressed that they did not initially report defendant's behavior because they were concerned about the security of their jobs, C.H. eventually reported it to the owners of the restaurant. Both victims later reported their claims to law enforcement officers, and this case ensued.

-1-

Defendant argues on appeal that the evidence presented at trial was insufficient to support his convictions, and that he is entitled to a new trial because the prosecution suppressed material evidence in violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 215 (1963). We disagree and conclude that the evidence was sufficient to support defendant's convictions, and that defendant has not established a *Brady* violation.

## II. INSUFFICIENT EVIDENCE

Defendant first argues that the evidence was insufficient because the prosecution relied on the victims' testimony and they were not credible witnesses. The victims testified at trial that when they initially reported their claims to a police officer, the officer told them that defendant's actions did not comprise any criminal offense. C.H. testified that the officer told her to consult with an attorney, so both victims did so. After speaking with an attorney, both victims returned to the police station and spoke with a different police officer, and these charges were eventually filed. Defendant asserts that the victims consulted an attorney for "financial gain," although he does not explain how the victims stood to gain financially from speaking with an attorney, nor has he offered any evidence that they have had any "financial gain." Defendant also claims that the victims must have embellished their claims when speaking with the second officer in order to ensure that criminal charges would be filed against him.

In fact, there is no information in the record about what the victims initially reported to the police officer because the first officer failed to file a written report. Lastly, defendant claims that the victims attempted to persuade other employees at the restaurant "to get on the 'bandwagon' and join a lawsuit against defendant." However, there was conflicting testimony at the trial regarding the victims' alleged "bandwagon" attempts.

Our Supreme Court has held that "[t]he jury is the sole judge of the facts; its role includes listening to testimony, weighing evidence, and making credibility determinations." *People v Mardlin*, 487 Mich 609, 626; 790 NW2d 607 (2010). Through listening and observing witnesses and testimony, juries are able to make determinations regarding credibility and evidence; "appellate courts are not juries, and even when reviewing the sufficiency of the evidence they must not interfere with the juries role" as juries are in a more favorable position than appellate courts to make those determinations. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Clearly, the jury found the victims to be credible witnesses, and nothing in the record convinces us that a rational trier of fact could not have come to this determination. See *People v Herndon*, 246 Mich App 371, 415; 633 NW2d 376 (2001). We find that defendant's arguments about the victims' lack of credibility are not persuasive. In addition, the evidence presented was sufficient to establish that defendant committed this offense.

In *People v Patterson*, 428 Mich 502, 515; 410 NW2d 733 (1987), our Supreme Court held that in order to prove a charge of CSC IV, the prosecution must show that the defendant "intentionally touched the complainant's genital area, or the clothing covering that area[1];

---

[1] Although *Patterson* specifies that a defendant must intentionally touch a complainant's "genital area," MCL 750.520a(q) defines "sexual contact" as "the intentional touching of the victim's or

second, the touching must have been done with the intent and for the purpose of sexual arousal or sexual gratification; and, third, force or coercion must have been used to accomplish the sexual contact." We find that the evidence presented in the instant case established these elements.

Both of the victims testified that defendant touched them repeatedly on the clothing over their buttocks while they were at work, and each victim testified that defendant had touched her genital area while driving them in a vehicle on a work assignment. J.P. also testified that defendant touched her breasts without her consent while she was at work. Under *Patterson*, this testimony was sufficient to establish the first element of the offense beyond a reasonable doubt. *Patterson, supra*, at 515; MCL 750.520a(f), (q).

Secondly, the evidence was sufficient to allow a rational juror to conclude beyond a reasonable doubt that defendant's touching of the victims could "reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for a sexual purpose." MCL 750.520a(q). The evidence demonstrated that defendant had established a pattern of touching the victims inappropriately and of making sexual comments to them and to others under his authority at the restaurant. C.H. testified that in addition to his repeated requests to take nude pictures of her, defendant also asked her more than once whether she and her husband engaged in sexual acts with additional partners. J.P. testified that defendant invited her into his apartment during her interview to "break . . . in" his bed. Additionally, the restaurant's co-owner testified that several employees complained about defendant's inappropriate sexual comments or touching during his investigation of C.H.'s allegations. This testimony was sufficient to establish beyond a reasonable doubt that defendant touched the victims for the purpose of sexual arousal or gratification.

Finally, the prosecution was required to show that force or coercion was used to accomplish the sexual contact. *Patterson, supra*, at 515. This Court has held that "force or coercion is not limited to physical violence but is instead determined in light of all the circumstances." *People v Brown*, 197 Mich App 448, 450; 495 NW2d 812 (1992). As the general manager of the restaurant, defendant hired both of the victims and was their immediate supervisor. In addition, a close relative of one of the victims also worked at the restaurant. Both victims testified that they did not immediately report defendant's conduct to the owners or to the police because they were concerned about their jobs or those of family members. This testimony was sufficient to show that defendant used his position of authority as "implied, legal, or constructive coercion" to accomplish the touching. *People v Premo*, 213 Mich App 406, 411; 540 NW2d 715 (1995). We find that the evidence presented was sufficient to establish the elements of the offense.

---

actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts[.]" "Intimate parts" is defined to include "the primary genital area, groin, inner thigh, buttock, or breast of a human being. MCL 750.520a(f). We use the broader statutory definition of sexual contact in our analysis.

Additionally, all the evidence defendant claims tarnishes the reliability of the victims was presented to the jury. We will not stand in the place of the jury when it comes to judging the credibility of the witnesses. *Mardlin*, 487 Mich at 626.

## III. *BRADY* VIOLATION

Defendant argues that his right to a fair trial was violated based on the suppression of evidence by the prosecution. In defendant's motion for new trial, defense counsel asserted that they did not learn the identity of the officer with whom the victims spoke during their initial visit to the police station until after trial because there was no record of the victims' visit. Defendant argued that the "missing" officer's testimony was material to the outcome of the case because the officer would have corroborated defendant's argument that the victims embellished their stories after their first meeting with the police failed to result in the filing of charges against defendant. We agree with the circuit court's finding that there was no *Brady* violation in this case.

In *Brady*, discussed by our Supreme Court in *People v Chenault*, 495 Mich 142; 845 NW2d 731 (2014), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Chenault, supra*, at 149, citing *Brady, supra*, at 87 (quotation marks omitted). In *Chenault*, our Supreme Court also discussed the test the United States Supreme Court set forth in *Strickler v Greene*, 527 US 263, 281-282; 119 S Ct 1936; 144 L Ed 2d 286 (1999) and determined that a *Brady* violation has occurred if: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *Chenault, supra*, at 155. We find that there was no *Brady* violation in the instant case because the evidence was not clearly favorable to defendant, and because defendant has not shown that it was material to his case.

Defendant has established the first part of the *Chenault* test. Although there is no evidence in the record to suggest that the prosecutor acted in bad faith to prevent defendant from discovering this evidence, evidence is considered suppressed where it is within the prosecutor's control, even when it is unknown to the prosecution, and "without regard to the prosecution's good or bad faith." *Chenault, supra*, at 150. During the hearing on defendant's first motion for new trial, the prosecutor told the court that the Midland police chief knew the identity of the officer with whom the victims had spoken, and also that the officer had been "spoken to" regarding his failure to file a written report of their allegations. These statements indicate that this evidence was within the prosecution's "control" before trial; thus, it may be considered to have been suppressed. Defendant was not required to find this evidence himself because *Chenault* eliminated the requirement that in order to find that there was a *Brady* violation, a defendant would have to show that defense counsel could not have obtained the evidence "himself with any reasonable diligence." *Id.* at 151, citing *People v Lester*, 232 Mich App 262, 281; 591 NW 2d 267 (1998).

Secondly, *Chenault* required defendant to show that the evidence was favorable to him. *Chenault, supra*, at 155. Given the (previously missing) officer's testimony at the hearing on defendant's second motion for new trial, we conclude that defendant has not satisfied this element. Defendant argues that the officer would not have disregarded the victims' claims if

they had reported to him the same instances of nonconsensual touching that they testified to at trial. We are not persuaded by this argument given the officer's testimony that he did not even remember speaking with victims, let alone the substance of their complaints. Moreover, the officer's testimony indicated that if the victims had reported that defendant had touched them inappropriately, he may not have pursued charges against defendant based on the allegations[2]. Because defendant has not demonstrated that the officer's testimony was favorable to his case, we find that he has not established the second part of the *Chenault/Strickler* test.

Finally, defendant has failed to demonstrate that the suppressed evidence was material to the outcome of the case. In making this determination, the question we must ask "is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" *Chenault*, *supra*, at 157, quoting *Kyles v Whitley*, 514 US 419, 434; 115 S Ct 1555; 131 L Ed 2d 490 (1995). In this case, the record clearly indicates that the officer's testimony was not material to the case. As previously mentioned, the officer did not remember speaking with the victims, or the substance of their allegations. Consequently, the officer could not have testified at trial that the victims' allegations did not meet the requisite threshold for filing CSC IV charges against defendant. Because the officer could not testify with any specificity as to his actions in this case, his testimony at the hearing does not undermine confidence in the verdict. The evidence was not material, and defendant received a fair trial without it and is not entitled to a new trial.

Affirmed.

/s/ Amy Ronayne Krause
/s/ William B. Murphy
/s/ Deborah A. Servitto

---

[2] At the hearing on defendant's second motion for new trial, the officer testified that "if a girl was in high school and her boyfriend slapped her on the butt or something, would I, you know, contact the parents immediately? I would probably tell her to go home and tell her parents. And if they want to come in and talk to me, then they can." This testimony suggests that the officer may have determined that the victims' allegations, as stated at trial, did not warrant the filing of criminal charges against defendant.