# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MAKALANI HAMADI DANIELS,

Defendant-Appellant.

UNPUBLISHED
April 14, 2016

No. 325198
Wayne Circuit Court
LC No. 14-005154-FC

Before: O'CONNELL, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

Defendant, Makalani Hamadi Daniels, appeals as of right his conviction, following a bench trial, of kidnapping, MCL 750.349(1)(c), and first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(c) and (e). The trial court sentenced Daniels to serve 12 to 25 years' imprisonment for both offenses. We affirm.

## I. FACTUAL BACKGROUND

According to the victim, in September 2003, she took a cab to her boyfriend's house on the west side of Detroit one evening. They argued, and after the argument escalated into a physical fight, the victim left her boyfriend's home at between 11:00 p.m. and midnight. As she waited at a bus stop, Daniels drove up and stopped at the curb nearby. Daniels pointed a gun at the victim and told her to get into the car. When the victim was in the car, Daniels drove her to an alley, climbed into the victim's seat, and sexually assaulted her. Afterward, he pushed the victim out of the car, threw her clothes out after her, and drove away.

The prosecution also admitted the evidence of others acts witnesses. According to the first witness, she met Daniels through a friend in 2009. At around 2:00 or 3:00 a.m. in May 2009, the first witness was getting ready to walk to a gas station when Daniels called her and invited her to "hang out." Daniels picked her up while she was walking. As soon as the first witness got into the car, Daniels "pulled a gun on [her]." At first, she thought he was joking, but he drove to an empty street and parked. While in the car, Daniels made her perform fellatio and had vaginal intercourse with her. When Daniels finished, the witness left the car.

According to the second witness, at about 5:30 a.m. on a morning in April 2014, she was waiting at a bus stop to catch a bus to work. While she was waiting for the bus, Daniels approached her in a car and offered to pay her for sexual services. The second witness declined

-1-

and told Daniels she was on her way to work. Daniels grabbed the second witness and dragged her into the car. He then drove to an alley, where he made the second witness perform fellatio before he had vaginal intercourse with her. He then forced the second witness out of the car and threw her belongings out after her.

A variety of other witnesses, including police officers and a DNA analyst, testified at defendant's bench trial. Though DNA samples were collected in a rape kit after the offense, they were not tested until recently. The DNA analyst testified that the likelihood that a random person was the major DNA donor to the victim's rape kit was "one in 51.15 quintillion for whites, one in 299 quadrillion for blacks, and one in 3.067 quintillion for Hispanics." Daniels testified that each of the witnesses was a prostitute whom he accidentally failed to pay.

Following the trial, the trial court found that it believed the victim. The testimonies of the police officers and a nurse at the hospital corroborated the victim's condition, and DNA testing indicated Daniels was the major donor to sperm found on the victim. The trial court found that it could not credit defendant's testimony that all three women were prostitutes that he had accidentally failed to pay because that number of coincidences was unlikely. It ultimately found Daniels guilty of kidnapping and CSC I.

## II. STANDARD OF REVIEW

This Court reviews for an abuse of discretion preserved challenges to the trial court's evidentiary rulings. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). We review de novo the preliminary questions of law surrounding the admission of evidence, such as whether a rule of evidence bars admitting it. *Id*. at 723.

## III. ANALYSIS

Daniels contends that the other-acts evidence was inadmissible because it was not relevant and there were not enough common factors to demonstrate that the assaults were part of a common scheme. We disagree.

Generally, MRE 404 prohibits a party from introducing evidence of another party's other crimes, wrongs, or acts to prove that person's character or propensity to engage in that type of action. Such evidence

> may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material . . . . [MRE 404(b)(1).]

"Evidence relevant to a noncharacter purpose is admissible under MRE 404(b) even if it also reflects on a defendant's character." *People v Mardlin*, 487 Mich 609, 615-616; 790 NW2d 607 (2010) (emphasis removed). The trial court properly admits other acts evidence if the proponent establishes that (1) it is offering the evidence for a proper purpose, (2) the evidence is relevant to a fact of consequence at trial, and (3) the evidence is not substantially more prejudicial than probative. *People v Sabin (After Remand)*, 463 Mich 43, 55-56; 614 NW2d 888 (2000).

In this case, the trial court admitted the evidence as evidence of a common scheme and evidence that the victim did not consent to defendant's conduct. Other acts are admissible as part of a defendant's common scheme if the defendant's actions show "common features indicating a common design" to an extent that they "indicate the existence of a plan rather than a series of similar spontaneous acts[.]" *Id*. at 65-66. Common schemes need not be identical and need only show sufficient common features to support the inference that such features are part of a general plan. *Id*. at 64-65.

The trial court may admit other-acts evidence when a defendant's use of a common plan tends to show that it is less likely that the complainant consented to the conduct, including schemes that a defendant uses "to give the appearance of consent and make proof of nonconsent difficult." *People v Oliphant*, 399 Mich 472, 491; 250 NW2d 443 (1976). An unusual frequency of events indicates that the events are logically relevant:

> If a type of event linked to the defendant occurs with unusual frequency, evidence of the occurrences may be probative . . . because it is objectively improbable that such events occur so often in relation to the same person due to mere happenstance. [*Mardlin*, 487 Mich at 617.]

In this case, the victim and witnesses were all women alone at night. All the women were on foot and accosted by a lone driver on a public way. The driver drove each woman to a nearby, isolated area and had sex with her against her will in the vehicle. In two instances, the driver threw the woman's belongings out into the street before driving off. Even though one witness was acquainted with Daniels and willingly got into the vehicle, and one witness did not testify that the conduct was at gunpoint, there are sufficient similarities in the acts to demonstrate a common scheme. This evidence tended to make it less likely that the victim had consented to defendant's conduct and made it highly unlikely that the circumstances were coincidental. We conclude that the trial court properly determined that the other acts evidence was relevant under MRE 404(b).

We affirm.

/s/ Peter D. O'Connell
/s/ Jane E. Markey
/s/ Colleen A. O'Brien