NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0478n.06

Case No. 23-1005

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MALORY ZAJDEL; ADAM ZAJDEL,

    Plaintiffs-Appellants,

v.

EXEL, INC., a Foreign Corporation, dba DHL
Supply Chain (USA); MATTHEW PAUL
BOHLAND,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**

Nov 17, 2023

KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

Before: WHITE, NALBANDIAN, and MURPHY, Circuit Judges.

WHITE, Circuit Judge. Plaintiffs-Appellants Malory and Adam Zajdel appeal the grant of

summary judgment in favor of Defendants DHL and Matthew Bohland in this action arising from

a car accident. Because we agree with Plaintiffs that the district court improperly decided a key

issue of material fact that should have been left to a jury, we REVERSE and REMAND for further

proceedings consistent with this opinion.

## I. Facts

On a clear July morning, Malory Zajdel drove her car northbound on Van Dyke Avenue in

Warren, Michigan. Bohland, a DHL freight-truck driver, was in his truck at a nearby car dealership

where he made deliveries five times per week. Intending to make a left turn onto southbound Van

Dyke, he pulled out onto the road in front of Zajdel, blocking three lanes of northbound traffic.

Bohland had previously made the same left turn many times without incident. However, Zajdel

did not slow her car, and she hit the rear axle of Bohland's trailer. The crash seriously damaged

Zajdel's vehicle, and first responders had to rescue her with the Jaws of Life. Zajdel sustained numerous fractures, and an ambulance transported her to a local hospital for treatment.

Zajdel and her husband, Adam Zajdel, filed suit against Bohland and DHL. The complaint included one count alleging negligent operation of the truck and one count of loss of consortium. Following discovery, defendants moved for summary judgment, arguing that no reasonable juror could find Bohland more at fault for the crash than Zajdel.[1] The district court granted defendants' motion for summary judgment, concluding that there was no issue of material fact about whether Zajdel was more than 50% at fault for the accident.[2] Plaintiffs appeal, arguing that Zajdel's percentage of fault is for a jury to determine. We begin by reviewing the relevant evidence.

## A. The Collision

Bohland had to cross three lanes of traffic to make the left-hand turn. His trailer was 48-feet long—long enough to simultaneously block all three lanes of northbound traffic. In a deposition, Bohland estimated that it took twenty to twenty-five seconds to cross the northbound lanes from a complete stop, and he believed there was enough time to complete the turn before Zajdel's vehicle would reach his truck.

According to a collision report, Zajdel was traveling at 43 miles per hour, in a 35-mile-per-hour zone, and never braked, even seconds before the crash. The report concluded that the crash would not have occurred if Zajdel had driven the speed limit or applied her brakes at any point.

---

[1] As we discuss in Section II.B., Michigan bars recovery for noneconomic damages when the plaintiff is more than 50% at fault. *See* Mich. Comp. Laws § 500.3135(2)(b) (2022).

[2] The parties do not significantly dispute the circumstances surrounding the accident. Instead, the parties dispute Zajdel's level of fault, which is usually a jury question. *See Alfieri v. Bertorelli*, 813 N.W.2d 772, 777 (Mich. Ct. App. 2012); *Poch v. Anderson*, 580 N.W.2d 456, 461 (Mich. Ct. App. 1998).

Zajdel did not see a speed-limit sign and had reason to think she was driving properly. Most vehicles on the road traveled between 40 and 45 miles per hour, and a speed study found that the 85th percentile speed—the benchmark for a speed limit in Michigan—was 46 miles per hour. Zajdel was thus driving in line with most drivers. Because the speed limit just north of the crash site was 45 miles per hour, it is possible that drivers believed the same speed applied to the entire stretch of road. The two responding officers testified that Zajdel probably would not have received a ticket because her speed was reasonable.

The accident reconstruction report found that Bohland blocked Zajdel's path for six seconds, enough time for her to slow down. A truck traveled alongside Zajdel and braked in time to avoid a collision. Robert Tharpe, the driver of the truck, testified that there was "plenty of time to stop" and that he "couldn't believe" Zajdel "did not even hit the brakes." R. 15-3, PID 180. Zajdel explained in a deposition that she did not see the trailer in time because she glanced down for a few moments to check the time on her car's dashboard, and when she looked up, she saw the truck and "froze up." R. 15-2, PID 172, 175–56. There is no evidence that Zajdel was using her phone when the accident occurred.

The responding officers did not ascribe fault for the accident. In a report Bohland filled out for his employer, he responded to the question, "[h]ow can you avoid this type of accident in the future," by stating that he could "[g]ive more time when entering a 7 lane busy state highway." R. 15-6, PID 204. DHL concluded that Bohland had failed to follow proper procedures because "there was not . . . enough distance between him and the incoming traffic" and gave him a written warning. R. 15-8, PID 216. The report also indicated that Bohland had been disciplined for a similar safety issue in 2017. In a deposition, Bohland's supervisor agreed that Bohland had not "allow[ed] sufficient spacial management for clearance of his turn." *Id.*

3

## B. District Court Order

In its order granting defendants' motion for summary judgment, the district court concluded that "reasonable minds could not differ" on whether Zajdel was more than 50% at fault for the accident. R. 18, PID 305. The court faulted Zajdel for speeding, then concluded that her failure to take any evasive action "suggests she was driving while distracted." *Id.* at 303. The court found it particularly convincing that the accident occurred on a clear, bright day and that Tharpe, the other truck driver, was able to stop his vehicle in time to avoid a collision. Finally, because Bohland had made the same turn well over a thousand times, the district court reasoned that he had enough experience to know when the turn was safe. On these facts, the court concluded that there was no material issue of fact regarding whether Zajdel was more than 50% at fault for the accident.

## II. Analysis

## A. Standard of Review

We review a district court's grant of summary judgment de novo. *Profit Pet v. Arthur Dogswell, LLC*, 603 F.3d 308, 311 (6th Cir. 2010). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant makes this showing by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." *Id.* at 56(c)(1)(A). A defendant moving for summary judgment bears "the burden of showing the absence of a genuine issue of material fact as to at least one essential element of Plaintiff's claim." *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

Once a defendant meets this burden, the plaintiff, as the nonmoving party, must identify specific facts that show there is a genuine issue for trial. *See id.* Courts must accept the plaintiff's evidence as true, draw all reasonable inferences in the plaintiff's favor, and view "all facts and inferences drawn therefrom in the light most favorable to [the plaintiff]." *Id.*

On appeal, we will reverse a grant of summary judgment "if the nonmoving party has presented evidence of specific facts, which, viewed in the most favorable light, indicates that there is a genuine issue for trial." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999) (en banc)). Here, reversal is appropriate if a reasonable juror could apportion 50% or more of the fault to Bohland.

## B. Negligence and Apportioning Fault

Negligence is "conduct involving an unreasonable risk of harm." *Schultz v. Consumers Power Co.*, 506 N.W.2d 175, 177 (Mich. 1993). It occurs when an individual breaches a legal duty owed to another person. *Id.* To succeed in a negligence claim, the plaintiff must demonstrate both cause in fact and proximate cause. *See Ray v. Swager*, 903 N.W.2d 366, 371 (Mich. 2017). Cause in fact, also known as factual causation, requires a showing that the injury would not have occurred "but for" the party's actions. *See id.* Proximate cause, known as legal causation, "involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Id.* (quoting *Skinner v. Square D Co.*, 516 N.W.2d 475, 479 (Mich. 1994)). When an individual violates a state statute, there is a rebuttable presumption of negligence. *Zeni v. Anderson*, 243 N.W.2d 270, 276 (Mich. 1976). A party can rebut the presumption if the surrounding circumstances provide a valid excuse or if the negligence did not contribute to the injury. *Id.* at 276–77.

5

Generally, a determination of negligence is made by the finder of fact. *See Davis v. Thornton*, 180 N.W.2d 11, 13–14 (Mich. 1970). The determination of negligence "may not be prescinded from the fact finder except on a determination that all reasonable men would agree." *Id.* at 14.

Michigan uses a comparative-negligence system, in which a plaintiff's recovery at trial is reduced by the proportion of the injury caused by the plaintiff's own negligence. *See Placek v. City of Sterling Heights*, 275 N.W.2d 511, 519–20 (Mich. 1979). A plaintiff may not recover noneconomic damages if the plaintiff is more than 50% at fault. Mich. Comp. Laws § 500.3135(2)(b) (2022). The relative fault of the parties is ordinarily a question for the jury. *Poch v. Anderson*, 580 N.W.2d 456, 461 (Mich. Ct. App. 1998). However, summary judgment is appropriate if no reasonable juror could find that the defendant was at greater fault than the plaintiff. *Huggins v. Scripter*, 669 N.W.2d 813, 813 (Mich. 2003). When parties present conflicting accounts, the jury is responsible for "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts." *Wyatt*, 999 F.3d at 410 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *accord People v. Mardlin*, 790 N.W.2d 607, 618 (Mich. 2010).

### C. Disputed Issues of Fact

Neither party denies partial fault for the accident. Instead, they dispute whether Zajdel was more than 50% at fault. In granting summary judgment, the district court determined that no reasonable juror could find Zajdel equally or less to blame than Bohland. However, the district court failed to consider the evidence in the light most favorable to Zajdel and made key factual determinations that should have been left to a jury.

A key fact in dispute is the extent to which Zajdel's speed contributed to the accident. The speed limit was 35 miles per hour, but Zajdel did not remember seeing a speed-limit sign, and local police could not confirm that there was one on her route. A speed study confirmed that most drivers on the road traveled at speeds consistent with a higher speed limit. The district court did not give Zajdel the benefit of reasonable inferences in her favor. Although the district court is correct that a speed study alone is insufficient to establish a new speed limit, the study does provide evidence that Zajdel's speed was not unreasonable and Bohland should have been aware of the speed of traffic.[3] Taken in the light most favorable to Zajdel, a reasonable jury could conclude that her driving above the speed limit was only marginally negligent.

Another key fact in dispute is the extent to which Zajdel's alleged distraction contributed to the collision. A responding officer testified that he did not believe that a "momentary glance at the clock" constituted distracted driving, but he also did not "think a momentary glance would cause you to not see something that large in front of you." R. 15-10, PID 231. Zajdel claimed that she looked down at her dashboard clock for just "2 to 3 seconds" before the crash, R. 15-12, PID 248, and that after looking up, she was so shocked by the trailer that she "froze up" and could not brake in time, R. 15-2, PID 176. When construing these facts in the light most favorable to Zajdel, a reasonable juror could determine that she was not excessively distracted or that her distraction was insufficient to allocate her more than 50% of the fault.

---

[3] Defendants argued in their motion to dismiss that Zajdel lost her right of way because she was speeding, citing to a Michigan statute. *See* Mich. Comp. Laws § 257.649(7) (2022) ("The driver of a vehicle traveling at an unlawful speed forfeits a right of way that the driver might otherwise have under this section."). However, Section 649 only regulates highway intersections. *Id.* § 257.649(1) ("The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle that has entered the intersection from a different highway."). Defendants do not claim that the accident occurred at a highway intersection, as defined by Michigan statute. *See id.* § 257.22.

Finally, the district court improperly deferred to Bohland's version of events. Zajdel argued below, with support from an expert witness, that Bohland violated state law when he made his turn, thus supporting a presumption of negligence. Michigan law requires drivers to "yield the right of way to vehicles approaching on the highway" before making a turn. Mich. Comp. Laws § 257.652(1) (2022). Zajdel argued that Bohland breached that duty because he did not give himself enough time to complete the turn, citing the fact he was disciplined for that reason after the crash. The district court rejected the argument, crediting Bohland's experience instead. Because Bohland had completed the same turn many times, the court concluded that he "would have been well aware of how his tractor-trailer accelerated and the time it would have taken to complete the turn." R. 18, PID 305. The district court thus determined that Bohland was "substantially less at fault than Zajdel." *Id.* However, viewing the evidence in Zajdel's favor, a reasonable juror could conclude that Bohland violated section 257.652(1) by making a turn with insufficient space and time, which would make him presumptively negligent.

On this record, a reasonable jury could conclude that both Zajdel and Bohland were negligent and that Bohland was at least 50% at fault. Defendants resist this conclusion, pointing to nearly a dozen purportedly similar cases where summary judgment was granted. The cases, mostly unpublished decisions from the Michigan Court of Appeals, do not help Defendants.

The first group of cases were not resolved on grounds of comparative negligence. Rather, summary judgment was granted in those cases because there was no evidence of negligence in the first place, or any such evidence was minimal. *Cecile v. Wang*, No. 336881, 2018 WL 2990185, at *3 (Mich. Ct. App. June 14, 2018) (holding that there was no evidence of negligence when a driver hit a pedestrian who jaywalked across a busy five-lane road during rush hour on a rainy and sleety evening, and any negligence would be "unquestionably" less than the plaintiff's); *see also*

8

*Est. of Homrich by Homrich v. Selective Ins. Co. of Am.*, No. 346583, 2020 WL 5739651, at *2 (Mich. Ct. App. Sept. 24, 2020) (no evidence of negligence when one driver hit a small child who emerged suddenly from behind a recycling bin while it was dark, and another hit the child while the child was being attended to); *Ascencio v. Snider*, No. 316643, 2014 WL 4723830, at *2 (Mich. Ct. App. Sept. 23, 2014) (driver was not negligent when he hit a bicyclist who cut across his line of travel as he was exiting a lot after traffic had cleared); *Davis v. Williams*, No. 278713, 2008 WL 5101634, at *6 (Mich. Ct. App. Dec. 4, 2008) (driver did not act negligently when he hit a vehicle that suddenly swerved into his lane); *Almaswari v. Great Am. Ins. Co.*, No. 360612, 2023 WL 3140188, at *2 (Mich. Ct. App. Apr. 27, 2023) (the plaintiff could not rebut the presumption of negligence when he rear-ended the defendant's vehicle after she stopped to avoid a truck that swerved into plaintiff and defendant's lane).

Defendants' other cases undermine their argument and, if anything, support Plaintiffs' position. For example, Defendants cite the Michigan Supreme Court case establishing that a defendant may be entitled to summary disposition on the issue of comparative negligence. *Huggins*, 669 N.W.2d at 813 (holding that recovery was precluded because the defendant driver was less than 50% responsible when he hit a plaintiff who "was crouching or kneeling in the middle of an unlit rural road in the middle of the night, just beyond the crest of a hill, wearing dark colored clothing"). In *Huggins*, the court held that the defendant was less than 50% responsible *even if* he looked away from the road for a few moments to check the time, like Zajdel did here. *Id.* Defendants also cite Michigan Court of Appeals cases supporting summary judgment, but the court held in those cases that drivers with the right of way were not more than 50% responsible, even if they were speeding or could have slowed down to prevent a collision. *See, e.g.*, *O'Keefe v. Landgraff*, No. 327455, 2016 WL 4467486, at *8 (Mich. Ct. App. Aug. 23, 2016) (holding that,

9

even if speeding, a driver who struck a motorcyclist who entered her right of way without time for her to stop could not be held more than 50% responsible); *Duquette v. Reister*, No. 316026, 2014 WL 2795878, at *2 (Mich. Ct. App. June 19, 2014) (holding that the defendant was less than 50% responsible for an accident—even if he could have slowed down in time to stop the collision— because he had the right of way, drove with "reasonable caution," and the plaintiff "darted" in front of his vehicle); *Harris v. Weaver*, No. 265617, 2006 WL 2381435, at *3 (Mich. Ct. App. Aug. 17, 2006) (holding that the plaintiff was more than 50% responsible for the collision when she crossed five lanes of traffic and drifted into the defendant's lane, although the defendant bus driver might have anticipated that the plaintiff would cross into her lane).

In sum, Defendants' cases support the contention that summary judgment is appropriate in certain comparative-negligence cases but not in this one. There is no dispute that both drivers bear significant responsibility—Bohland by turning into Zajdel's right of way, and Zajdel by failing to slow or stop. Under these circumstances, apportioning fault is not a determination for the district court. Instead, the jury is responsible for making such determinations. Viewing the facts in the light most favorable to Zajdel and drawing all reasonable inferences in her favor, a reasonable jury could find that she was 50% or less at fault. Accordingly, the trial court's grant of summary judgment was improper.

### III.  Conclusion

For the reasons stated, we REVERSE the district court's order granting summary judgment for Defendants and REMAND for further proceedings consistent with this opinion.