# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

WENDELL ALAN RACETTE,

       Defendant-Appellant.

UNPUBLISHED
September 1, 2015

No. 314895
Ingham Circuit Court
LC No. 11-000182-FC

Before: SAWYER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendant Wendell Alan Racette appeals by right his jury convictions of five counts of criminal sexual conduct in the first-degree (CSC I), MCL 750.520b(1)(a), and ten counts of criminal sexual conduct in the second-degree (CSC II), MCL 750.520c(1)(a). The trial court sentenced Racette to serve 15 to 30 years in prison for each conviction of CSC I, and to serve 86 months to 15 years in prison for each conviction of CSC II. For the reasons more fully explained below, we reverse Racette's convictions and remand for a new trial.

## I. BASIC FACTS

The prosecutor charged Racette, who formerly practiced as a dentist specializing in the care of children, with criminal sexual conduct after one of Racette's former patients accused Racette of sexually assaulting him when he was a child. The complainant alleged that, during various visits to Racette's practice, Racette touched his genitals and anus, forced him to touch Racette's penis, and forced him to endure and perform fellatio. The complainant testified that Racette would sometimes engage in these sex acts while the complainant was under the influence of nitrous oxide. According to the complainant, he was occasionally taken to Racette's office to sleep off the effects of nitrous oxide, and on one such occasion, when he was seven or eight years of age, he awoke to find Racette penetrating his anus with his penis.

The jury at a first trial was unable to reach a verdict. However, the jury at Racette's second trial found him guilty as described. Racette now appeals his convictions from the second trial in this Court.

-1-

## II.  OTHER ACTS EVIDENCE

### A.  STANDARDS OF REVIEW

Racette argues on appeal that the trial court erred when it allowed several witnesses to testify generally about his use of physical force, abusive language, and threats with the children who came to his practice.  Racette contends that this testimony was inadmissible under MRE 404(b)(1).  Racette also argues that the trial court erred when it determined that, as permitted under MCL 768.27a, two other witnesses could testify that Racette engaged in sexual contact with them during visits to his dental practice.  This Court reviews a trial court's decision to admit evidence for an abuse of discretion.  *People v Roper*, 286 Mich App 77, 90; 777 NW2d 483 (2009).  A trial court abuses its discretion to admit evidence when its decision falls outside the range of reasonable and principled outcomes.  *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008).  This Court, however, reviews de novo whether the trial court properly interpreted and applied the relevant statutes.  *People v Rose*, 289 Mich App 499, 505; 808 NW2d 301 (2010).  We likewise review de novo whether the trial court properly interpreted and applied the rules of evidence.  *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

### B.  ANALYSIS

#### 1.  MRE 404

Evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant.  MRE 401.  Relevant evidence is admissible, unless otherwise prohibited.  MRE 402.  Evidence that a person has a defective character is logically relevant to prove that the person acted in conformity with his or her character.  See *People v VanderVliet*, 444 Mich 52, 61-63; 508 NW2d 114 (1993).  Nevertheless, because of the danger that the jury will give too much weight to such evidence, our Supreme Court has promulgated rules that strictly limit the use of character evidence at trial.  See *Roper*, 286 Mich App at 91.

A party generally may not present evidence that a person has a particular character "for the purpose of proving action in conformity" with his or her character.  MRE 404(a).  Similarly, a party may not present evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith."  MRE 404(b)(1).  MRE 404(b) does not, however, "prohibit all evidence of other acts that risks this character-to-conduct inference; the rule 'is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless give rise to an inference about the defendant's character.' "  *People v Jackson*, ___ Mich ___, slip op at 10; ___ NW2d ___ (2015), quoting *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010).  Stated another way, "[e]vidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character."  *Mardlin*, 487 Mich at 615.  Accordingly, the admissibility of evidence concerning other acts will in the first instance depend on whether the proponent of the evidence demonstrates that the evidence was relevant under MRE 401 and MRE 402 for a purpose other than to prove character and action in conformity with character.  *Id.*  Even if the other acts evidence is admissible for a proper purpose, the trial court should consider whether the prejudice that arises because the "evidence also unavoidably reflects the defendant's character"

substantially outweighs whatever probative value the evidence might have. *Id.*, citing MRE 403. The trial court may exclude the evidence notwithstanding that it is relevant for a proper purpose, if it determines that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Id.*

In addition to the allegations of sexual abuse, the complainant testified that Racette caused unnecessary pain in his dental treatments, and that he routinely resorted to abusive or threatening language and physical force to coerce him to cooperate with the abuse. At trial, some of Racette's former patients and staff testified that Racette did in fact use aggressive language and physical force with the children he treated in his practice. Some of the former child patients similarly testified that he threatened them not to reveal his behavior to their parents.

A former receptionist described children "screaming" during treatment and stated that Racette "wanted to soundproof so other people didn't hear." The witness further described young patients' crying and shaking, and having welts and marks on their faces. Asked to share her worst example of Racette's cruelty, the witness responded:
> There was a little girl who was three I believe. . . . And she was in the examining room, not the treatment room. And she was laying [sic] in the chair. He had her back and he kept slapping her face and telling her to shut up. And . . . she was just a little kid in a dentist's char. She wasn't screaming. She wasn't yelling. But he just kept slapping her face. And . . . it was very upsetting.

This witness testified that her discomfort with Racette's practices caused her to quit.

A former dental assistant and office manager similarly described the young patients' "constantly screaming and crying," and added that Racette "would hold their nose and their mouth so they would stop breathing," and would "literally pick them up and just jerk them down . . . onto the back of the seat to startle them." Another receptionist described Racette's treatment of his young patients as "horrible." According to this former employee, Racette "would shake them sometimes and grab their nose and grind his teeth at them," and added that "it was a very sad thing to see."

The testimony by Racette's former staffers did not have any tendency to make the existence of any fact that is of consequence to the charges at issue more or less probable other than that he had a defective character and must have acted in conformity with that character during the events at issue. MRE 401. The staffers presented a picture of Racette as a dentist who had a propensity to mistreat his child-patients; indeed, the testimony—taken together— strongly suggested that he deliberately inflicted pain beyond that necessary for treatment, which one might infer made him a sadist. Because the evidence was not relevant for a purpose other than character-to-conduct, the trial court erred when it allowed the staffers to testify about Racette's tendency to treat his patients poorly. MRE 404(b)(1).

The prosecution also presented six witnesses who had been Racette's patients when they were children. One described crying "pretty hard" when Racette struck him in the chest, blew water in his face, and admonished that if the child spoke to his parents about the matter "bad things could happen." Another stated that Racette would grab her thigh to slide her to a higher

position in the chair, in response to which she started trying to sit as high as possible to prevent such "uncomfortable" handling on his part, and added that when she reacted to pain Racette threatened: "It'll get worse if you don't relax." The latter's brother described treatment at Racette's hands as "extremely painful," elaborating that he would receive gas that caused him to fall asleep, upon which Racette would "vigorously bang" on his chest and grab his legs, and that Racette responded to protestations by saying "what are you going to do about it?" and threatening that "it will be even worse" if the patient told his father.

Still another former pediatric patient described treatment from Racette as "horrifying," and recounted that she once was alone waiting for treatment when she left the chair and went to her mother in the reception area, upon which Racette retrieved her. She stated that Racette was comforting and professional in front of her mother, but his demeanor changed once they reached the treatment room. There he forced her into the chair and threatened to "rip her teeth out" if she ever did that again. Similarly, another such witness recounted his time with Racette as "traumatic," and offered the example that when receiving treatment for some cracked teeth he started crying, in response to which Racette "grabbed me and told me to shut my mouth." The last of these witnesses testified that he "hated" going for treatment with Racette, and recounted that Racette yelled at him to stop fidgeting, slapped him in the chest, and warned him that "if you don't stop flinching I'm going to make this a lot more painful for you."

The testimony by Racette's former child-patients tended to corroborate the complainant's description of Racette's use of physical force and threats to compel compliance with his demands and deter him from revealing the abuse. For that reason, the testimony was marginally relevant for a purpose other than to show that Racette had a propensity to mistreat his child-patients. MRE 401; MRE 404(b)(1). Nevertheless, the testimony concerning Racette's use of force and threats was far removed from the allegations of sexual assault at issue in this case. Despite the marginal relevance of this testimony, the details were sufficiently disturbing that there was a significant danger that the jury would make an improper character-to-conduct inference—that is, the danger of unfair prejudice from this testimony substantially outweighed whatever probative value the evidence might have had. MRE 403. Consequently, the trial court should also have precluded Racette's former child-patients from testifying about his use of physical force and threats to compel them to comply with his demands and prevent them from revealing his inappropriate behavior.

## 2. MCL 768.27A

In addition to the testimony by Racette's former staffers and child-patients concerning his general use of force and threats, there was testimony by former child-patients concerning acts of alleged sexual abuse. One witness testified that, when she was 15 or 16 years old, Racette would touch her chest inappropriately when he put the "bib" on her:

> And when he did, his hands would be all over like the breast area. It wasn't just adjusting from the neck area. He'd have to straighten it out and flatten it down. He would wipe his instruments off on the bib area, and it only goes so far. So any time he was on the bib area he was on the breast area.

The witness further described returning to consciousness after being given nitrous oxide and noticing Racette's "hands being on the breast area." The witness described the situation as "just not right": "The touching, he would try to play it off as if it was in the course of duty, as adjusting your bib or got to clean my instrument."

Another witness testified that, on one occasion when she was 10 or 11 years of age, she awoke from an application of nitrous oxide and noticed that Racette's "hands weren't where they were supposed to be because when I made eye contact, he made eye contact back, like he had done something that shouldn't have been—his hands were not up my shirt but it seems like out of my shirt." The witness agreed when asked if what she had felt was Racette bringing his hands out of her shirt. The witness added that she said nothing about it, but "I could tell by the way he looked at me and it just, he looked at me like he was surprised, like he was surprised either I woke or just wondering what I was going to say."

Although this testimony plainly involved the admission of evidence of other acts, the Legislature has determined that, "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." See MCL 768.27a(1). Listed offenses are those indicated in MCL 28.722. See MCL 768.27a(2). MCL 768.27a thus "allows the admission of other-acts evidence to demonstrate the likelihood of a defendant's criminal sexual behavior toward other minors." *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007). Accordingly, if admissible under MCL 768.27a, there is no need to justify the evidence under MRE 404(b), although the trial court should remain careful to weigh the probative value of such evidence against its potential to cause unfair prejudice under MRE 403. *Id.* at 619-621.

Racette asserts that there was no evidence that he committed any of the "listed offenses" against the two witnesses for purposes of MCL 768.27a. The listed offenses include criminal sexual conduct in its various degrees. See MCL 768.27a(2)(a); MCL 28.722(j), (s)(*v*), (w)(*iv*), and (w)(*v*). One of the two witnesses described Racette pawing her bib and stated that she awoke to discover his hands on her breast area, which touches could amount to fourth-degree criminal sexual conduct. See MCL 750.520e(1)(a), (b)(*iv*), and (c). The other witness's account that she felt Racette bringing his hands out of her shirt as she emerged from a dose of nitrous oxide when she was 10 or 11 was evidence of criminal sexual conduct in the second and fourth degrees. See MCL 750.520c(1)(a); MCL 750.520e(1)(b)(*iv*) and (c). Accordingly, those two witnesses described listed offenses, and thus their testimony fell under MCL 768.27a for purposes of presenting "other-acts evidence to demonstrate the likelihood of a defendant's criminal sexual behavior toward other minors." *Pattison*, 276 Mich App at 620.

Racette alternatively argues that the trial court should have barred the testimony by these two witnesses under MRE 403. However, he has abandoned this claim of error by failing to properly argue and support it on appeal. See *People v Jones (On Rehearing)*, 201 Mich App 449, 456-457; 506 NW2d 542 (1993). Moreover, although the two witnesses' accounts were damaging to Racette's defense, their testimony was precisely the kind of evidence that the Legislature determined was relevant in criminal sexual conduct cases involving children. See *Pattison*, 276 Mich App at 620. Consequently, the testimony was not unfairly prejudicial, but rather probative of how Racette might have treated the complainant in this case.

The trial court did not err when it allowed these two witnesses to testify that Racette inappropriately touched them during treatment.

## C. HARMLESS ERROR

Although the trial court erred when it allowed Racette's former staffers to testify about his behavior toward his child patients and erred when it allowed the former child patients to testify about Racette's use of physical force and threats to compel compliance, the errors will not warrant relief if they were harmless. *People v Crawford*, 458 Mich 376, 399; 582 NW2d 785 (1998). In order to establish his right to relief, Racette must demonstrate that it is more probable than not that the errors affected the outcome of the lower court proceeding. *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999), citing MCL 769.26.

Given the nature and extent of the testimony, we cannot conclude that the errors were harmless. Had perhaps just one former employee, and one former patient, testified about Racette's cruelty, the testimony might have been overshadowed by the weight of the evidence properly admitted. But in this case the prosecution presented a parade of witnesses whose combined testimony—even to the extent that it was relevant for a proper purpose—tended to show that Racette had a terribly flawed character. Because the testimony painted Racette as a wicked man who has a propensity to abuse children, it is likely that the jury used the testimony for an improper character to conduct purpose. Stated another way, there was a significant danger that the jury found that Racette committed the even more outrageous acts described by the complainant because those acts were consistent with Racette's propensity to mistreat children. See *Crawford*, 458 Mich at 398-399.

It is more probable than not that the errors affected the outcome of the trial. Therefore, Racette is entitled to a new trial.

## III. OTHER ISSUES

Because we have determined that Racette is entitled to a new trial on the basis of improperly admitted other acts testimony, we need not consider the remainder of Racette's claims of error. However, we elect to briefly address some of the issues that might arise again on remand.

We agree with Racette that the prosecution's expert's account of what the complainant told him about alleged sexual abuse exceeded the scope of the hearsay exception for statements offered for medical diagnosis or treatment. See MRE 803(4). We further believe that the expert's opinion that the complainant had been sexually molested was not founded on his medical expertise and was subject to exclusion in accord with *People v Smith*, 425 Mich 98, 112-115; 387 NW2d 814 (1986). Nevertheless, the cross-examination and closing arguments by Racette's trial lawyer suggest that it was a matter of trial strategy to allow the prosecution's expert to testify.

In light of the doubts concerning how closely Racette's former office space accurately reflected how it appeared during the events at issue, along with abundant other evidence concerning how the office was set up and equipped at the relevant time, we conclude that the trial court acted within its discretion when it denied Racette's request to have the jury visit the

location.  Finally, we are not persuaded by Racette's argument that this case should be assigned to a second successor judge.  Racette's allegations of bias for the most part stem from adverse rulings, but adverse decisions—even if legally flawed—do not establish bias.  See *Band v Livonia Assocs*, 176 Mich App 95, 118; 439 NW2d 285 (1989).

Reversed and remanded for a new trial.  We do not retain jurisdiction.


/s/ David H. Sawyer
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro