# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRYAN PATRICK GILES,

        Defendant-Appellant.

UNPUBLISHED
June 28, 2016

No. 326535
Wayne Circuit Court
LC No. 14-008852-FC

Before: MURPHY, P.J., and SAAD and BORRELLO, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of five counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (sexual penetration with a person under age 13), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with a person under age 13). Defendant was sentenced to 20 to 60 years' imprisonment for each of the CSC-I convictions and 10 to 15 years' imprisonment for the CSC-II conviction, the sentences to be served concurrently. Defendant appeals as of right. For the reasons set forth in this opinion, we affirm.

## A. FACTS

Defendant's convictions arise out of the prolonged sexual abuse of the victim, his stepdaughter, from 2003 to 2005, when she was 8 to 10 years old and residing in the family home in Highland Park. The victim, who was 19 years old at the time of time of the January 2015 trial, testified to multiple and frequent acts of sexual abuse that defendant perpetrated against her during this time, including digital penetration, vaginal penetration, anal penetration, fellatio, cunnilingus, and sexual contact. The victim further testified to similar subsequent uncharged sexual acts by defendant that were ongoing and frequent, occurring in several different states as the family moved and continuing until she was 16 years old. There were no eye witnesses to the alleged sexual acts. In 2010, when the victim was 15 years old and residing in Alabama with her mother and defendant, she became pregnant. Paternity testing by the Michigan State Police Crime Lab in 2014 indicated that defendant was the father of the child. The victim testified that she told her mother multiple times throughout the years about the sexual abuse that defendant continually perpetrated against her, but her mother did not do anything to stop the abuse.

Defendant proceeded on the theory that the victim fabricated the allegations of sexual abuse supporting the charged offenses and his counsel attempted to attack her credibility. Defendant did not testify, but the victim's mother testified on behalf of the defense that she never observed any inappropriate sexual conduct by defendant toward the victim, the victim never told her about the sexual abuse, and the victim could be dishonest. The jury convicted defendant of CSC I and CSC II, as charged. This appeal ensued.

## B. ANALYSIS

## I. OTHER ACTS EVIDENCE

The trial court admitted evidence of uncharged sexual abuse that occurred in other states. Mainly, the court admitted evidence that a Michigan State Police Crime Lab DNA analysis showed that defendant was the father of the victim's child, which showed that defendant impregnated the victim when the victim was 15-years old. On appeal, defendant argues that the admission of this other-acts evidence was improper under MRE 403 because its prejudicial effect outweighed its probative value.

We review a trial court's decision regarding the admissibility of evidence for an abuse of discretion. *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012) (citation omitted). "Preliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (citation omitted).

In a criminal case, where, as here, a defendant is charged with committing a sex offense against a minor, MCL 768.27a permits the admission of evidence of a defendant's uncharged sexual offenses against a minor "for its bearing on any matter to which it is relevant," without having to justify its admissibility under MRE 404(b). *Watkins*, 491 Mich at 470-471, 486-487. MCL 768.27a "reflects the Legislature's policy decision that, in certain cases, juries should have the opportunity to weigh a defendant's behavioral history and view the case's facts in the larger context that the defendant's background affords." *Id.* at 620. "Naturally, a full and complete picture of a defendant's history will tend to shed light on the likelihood that a given crime was committed." *Id.*

Under the statute, to admit evidence of a defendant's other sexual offenses committed against a minor, the evidence must be relevant for any purpose. MCL 768.27a. However, "evidence admissible pursuant to MCL 768.27a may nonetheless be excluded under MRE 403 if 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Watkins*, 491 Mich at 481, quoting MRE 403. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010) (quotation marks omitted). "Thus, MRE 403 does not prohibit prejudicial evidence; only evidence that is unfairly so." *Id.* (quotation marks omitted).

In this case, the evidence of the subsequent uncharged sexual acts that defendant perpetrated against the victim, which eventually led to her pregnancy at age 15, were highly

relevant and admissible under MCL 768.27a. The evidence explained and gave context to the charged offenses and the abusive relationship between defendant and the victim, his stepdaughter, as well as the environment in which the offenses occurred. The evidence showed a pattern of conduct where defendant perpetrated substantial sexual abuse upon the vulnerable victim and bolstered the victim's credibility. *Watkins*, 491 Mich at 475-476, 491-492. The evidence countered the defense strategy to undermine the victim's credibility and it was therefore highly probative.

In addition, the probative value of the evidence was not outweighed by the danger of unfair prejudice for purposes of MRE 403. Here, as noted the evidence was highly probative. The uncharged criminal sexual conduct and the charged offenses were highly similar in nature. As discussed, the high similarity between the circumstances of the charged offenses and the other uncharged sexual acts makes the other-acts evidence highly relevant to support the victim's credibility regarding the charged offenses and to provide the jurors with the context of the abuse. Furthermore, the uncharged sexual conduct was temporally proximate to the charged offenses as the conduct was ongoing and occurred frequently. In addition, the victim's testimony about the uncharged acts was highly reliable in that it was supported by police DNA testing that indicated that defendant was the father of the victim's child. Finally and significantly, considering that the case turned on the credibility of the victim, evidence that defendant impregnated the victim when she was 15 years old was significant to bolster the victim's credibility and to rebut the defense's attack on her credibility. Moreover, given the substantial testimony of other abuse, there was no danger that the jury would give undue weight to the other-acts evidence.

Defendant argues that the other-acts evidence showed that he had a propensity to commit sexual acts against minors. However, under MCL 768.27a propensity is not a reason to exclude other-acts evidence. *Watkins*, 491 Mich at 470-471, 486-487. Thus, "other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *Watkins*, 491 Mich at 487. Moreover, the trial court in this case did not allow the evidence of the other uncharged sexual offenses for propensity purposes, but instead instructed the jurors to use the evidence only to assist them in judging the credibility of the victim. See *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998) ("It is well established that jurors are presumed to follow their instructions.")

In short, the trial court did not abuse its discretion in admitting the other-acts evidence where the evidence was admissible under MCL 768.27a and where the probative value of the evidence was not outweighed by the danger of unfair prejudice. *Watkins*, 491 Mich at 470-471.

## II. PROSECUTORIAL MISCONDUCT

Defendant claims that the prosecutor made improper arguments that deprived him of a fair trial.

Defendant did not contemporaneously object to the alleged improper statements and thus, this issue was not preserved for our review. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Unpreserved issues are reviewed for plain error affecting substantial rights." *Id.* "Reversal is warranted only when plain error resulted in the conviction of an

actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 475-476. "Further, [this Court] cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id.* at 476 (quotation marks omitted).

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64. Furthermore, "[a] prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id*.

Defendant claims that the following comments amounted to improper vouching for the victim's credibility:

> One of the things we want to talk about to you during jury selection and I want to talk to you about this now is judging credibility whether or not somebody is telling you the truth or not telling the truth.

> Nobody needs any special training to do that. Nobody needs any special training. Even a dog knows when it's being tripped on purpose and tipped [sic] over accidently.

> Even an animal knows someone's sentiment whether or not they are sincere or harming you. And I'm going to suggest to you in this case that [the] young [victim] her credibility has never been shaken.

> Her memory maybe, her memory might, but that's a whole lot different than your credibility. Think about that. You being a child or anybody an adult and having to go back 10 years, 12 years and recall exact dates and times that's not easy to do.

> And if you can't do that precisely that does not mean that you are not telling the truth. That means you know your memory is faulty like every other human being.

> And your memory on dates and times might not match up perfectly with someone else but it does not mean you are lying.

> * * *

> That's a natural flow of somebody telling you something and she made sense she couldn't be tripped up. She couldn't be tripped up by the defense counsel.

> And she couldn't be because that's why the truth does not change. It happened so it does not matter how many times you ask her the question it's not going to change the truth.

It does not matter how many different ways you phrase it it's not going to change the truth. But you have more than her words here even though you are committed to her word and her word is pretty solid.

It is well settled that a prosecutor may not vouch for the credibility of her witnesses by "imply[ing] that she had some special knowledge that the witnesses were testifying truthfully." *Id.* at 66. Further, a prosecutor may not place "the prestige of her position or her own integrity behind the testimony" of her witnesses. *People v McGhee*, 268 Mich App 600, 633; 709 NW2d 595 (2005). However, it is not improper for a prosecutor to "comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). It does not constitute improper vouching where the "challenged comments reflected arguments from the facts and testimony that the witnesses at issue were credible or worthy of belief." *Dobek*, 274 Mich App at 66.

Viewing the challenged remarks in context of the evidence and defense argument, we conclude the remarks do not rise to the level of improper vouching. Contrary to defendant's contention, the prosecutor did not imply that she had some special knowledge that the victim was testifying truthfully, or place the prestige of the prosecutor's office behind the victim's testimony. Instead, the prosecutor argued from the evidence that the victim was worthy of belief, pointing out that the victim withstood defense counsel's attacks, her testimony made sense, and she did not waiver in her testimony regarding the sexual abuse, despite her inability to recall specific dates and timing of defendant's sexual assaults. This argument was properly responsive to rebut defendant's claims that the victim's allegations of sexual abuse were false and defense counsel's attack on her credibility. Indeed, during his cross-examination of the victim, defense counsel highlighted her inability to recall specific dates and timing regarding the abuse and argued in his opening statement that she was falsely accusing defendant of sexual misconduct, making it proper for the prosecutor to respond by arguing that the victim was telling the truth. See *Thomas*, 260 Mich App at 455. Given this record and considered in context, the prosecutor's comments were not improper.

Defendant next claims that the prosecutor made an improper civic duty argument by stating as follows:

And if you want to find the defendant not guilty you'll be able to concoct a reason like put words into it but you will not be holding up to the truth, to the oath you took.

"[I]t is improper for a prosecutor to appeal to the jury's civic duty by injecting issues broader than guilt or innocence or encouraging jurors to suspend their powers of judgment." *Id.* at 455-456. "However, a prosecutor is given great latitude to argue the evidence and all inferences relating to his theory of the case." *Id.*

Viewing the challenged remarks in context, we conclude that the remarks did not improperly imply that jurors should convict defendant as part of their civic duty. The prosecutor did not inject issues broader than the guilt or innocence of defendant that appealed to the fears and prejudices of the jurors, she did not encourage jurors to suspend their powers of judgment, or

attempt to divert the jury from its duty to decide the case on the evidence. Instead, immediately after the challenged remark, the prosecutor encouraged the jurors to base their verdict only on the facts and evidence applied to the law in this case, as they took an oath to do, and hold defendant accountable. This argument was properly focused on defendant's guilt or innocence and did not amount to a civic duty argument.

In sum, the prosecutor did not commit misconduct that denied defendant a fair and impartial trial. *Dobek*, 274 Mich App at 63-64.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant next claims that there was insufficient evidence to support his CSC convictions because the victim was not credible.

"A challenge to the sufficiency of the evidence is reviewed de novo." *People v Malone*, 287 Mich App 648, 654; 792 NW2d 7 (2010) (citation omitted). "When reviewing a claim of insufficient evidence, this Court reviews the record in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* "The reviewing court must draw all reasonable inferences and examine credibility issues in support of the jury verdict." *Id.* "When assessing a challenge to the sufficiency of evidence, the trier of fact, not the appellate court, determines what inferences may be fairly drawn from the evidence and the weight to be accorded those inferences." *Id.* "This Court must not interfere with the jury's role as the sole judge of the facts when reviewing the evidence." *Id.*

Defendant was convicted of five counts of CSC-I for digital penetration, vaginal penetration, anal penetration, cunnilingus, and fellatio of the victim when she was under age 13, MCL 750.520b(1)(a), and one count of CSC-II for sexual contact with the victim when she was under age 13, MCL 750.520c(1)(a).

To sustain a conviction under MCL 750.520b(1)(a), the prosecution must prove beyond a reasonable doubt that the defendant sexually penetrated the victim when the victim was under the age of 13. *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012). "Sexual penetration" "means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r).

To sustain a conviction under MCL 750.520c(1)(a), the prosecution must prove beyond a reasonable doubt that the defendant engaged in sexual contact with a person under age 13. "Sexual contact" is statutorily defined in relevant part as follows:

> the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose []. [MCL 750.520a(q)].

A victim's testimony need not be corroborated to sustain a conviction of CSC-I or CSC-II. MCL 750.520h; *People v Lemmon*, 456 Mich 625, 643 n 22; 576 NW2d 129 (1998).

In this case, there was sufficient evidence to allow a rational juror to conclude beyond a reasonable doubt that defendant committed the charged acts of CSC-I and CSC-II. The victim testified that defendant, her stepfather, started sexually abusing her when she was 8 years old when the family resided in Highland Park. The victim recalled the first sexual act with defendant when she awoke after falling asleep on his lap to find his hand in her pants and his fingers touching her vagina. During this incident, the victim recalled that defendant's fingers went on her "clit," he tried to put his fingers up into her vagina, he spit on his fingers and put them back on her vagina, and made her stroke his penis "going up and down" and defendant ejaculated. The victim recalled that defendant had sexual contact with her again about one or two weeks later and, thereafter, the sexual acts were continuous and frequent during the time the family resided in the Highland Park home. Specifically, the victim recalled defendant putting his finger by the opening of her vagina on more than one occasion and definitely more than five times.

The victim recalled defendant taking her into his bedroom and, while she lay on the bed on her back, he put his mouth on her vagina and performed oral sex on her using his tongue, which occurred on more than one occasion. The victim testified that defendant put his penis in her mouth and made her perform fellatio on him, which occurred in his office on more than one occasion. The victim recalled defendant putting his penis in her anus, which also occurred in his office. The victim recalled defendant trying to put his penis in her vagina when they were in the office. Furthermore, the victim recalled a time when she and defendant were driving in his car on the freeway and defendant had her "feeling on his penis," "stroking his penis" and defendant was "feeling on" her vagina under her clothes. In addition, police DNA testing confirmed that defendant was the father of the victim's child, which showed that defendant had intercourse with the victim and bolstered the victim's credibility regarding the other instances of abuse. Additionally, the victim's brother testified that the victim had told her that defendant had "touched her."[1]

On this record, a rational jury could reasonably conclude beyond a reasonable doubt that defendant committed five acts of sexual penetration (CSC-I) and one act of sexual contact (CSC-II) as charged. While defendant challenges the credibility of the victim, the victim's testimony need not be corroborated to sustain a conviction of CSC, MCL 750.520h; *Lemmon*, 456 Mich at

---

[1] There was additional testimony from the same brother that he was concerned about the time that the victim and defendant spent together. According to the testimony of this brother, he brought his concerns to his mother and defendant prompting defendant to "openly admit[] to molesting and sleeping with another girl." It is not clear from this testimony if defendant meant he was sleeping with the victim in this case. Rather it is more likely that defendant's admission related to an affair he was having with a 17-year-old girl that was living with the family while they resided in St. Louis. According to defendant's wife, defendant did confess to an affair with the 17-year-old girl.

643 n 22.  Moreover, witness credibility falls within the exclusive purview of the jury, and this Court "will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses."  *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).  In short, there was sufficient evidence to sustain defendant's convictions of CSC-I and CSC-II.

## IV.  NEWLY AVAILABLE EVIDENCE

Lastly, defendant filed a number of motions with this Court seeking to remand the matter to the trial court for a new trial.  The motions were denied by this Court.  The basis for defendant's request was that he had "new evidence" that the victim had recanted her testimony.  However, in the interests of completeness, we reviewed the documents presented in support of the motions and find that defendant has failed to meet his burden for a new trial.  In order to receive a new trial based on newly discovered evidence, a defendant must show that "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *People v Grissom*, 492 Mich 296, 313; 821 NW2d 50 (2012), quoting *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003).  In order to entitle a defendant to a new trial, the evidence must also be admissible. See *People v Darden*, 230 Mich App 597, 606; 585 NW2d 27 (1998).

The crux of defendant's "newly discovered evidence" are some purported documents from various police agencies in St. Louis, Missouri and other locals purporting to demonstrate that the victim had recanted her testimony that defendant had sexually abused her.  Even presuming this evidence to be newly discovered and not merely newly available,[2] *and* presuming the evidence is admissible, the evidence must also make it probable that a different outcome would happen on retrial.  *Grissom*, 492 Mich at 313.  In determining whether the admission of statements would make a different result probable on retrial, it is necessary to consider the credibility of the victim in this case.  See *Cress*, 468 Mich at 692 (considering credibility of confessor); *People v Mechura*, 205 Mich App 481, 484; 517 NW2d 797 (1994) ("[A] trial court may evaluate the credibility of a witness in deciding a motion for a new trial.")  As defendant points out, there are some "lapses" in the testimony of the victim relative to exact dates when the sexual assaults occurred.  However, the victim's testimony was steadfast in her assertion that defendant committed sexual acts against her.  Additionally, there was the evidence of the victim's brother testimony that he felt defendant had paid far too much attention to the victim. The brother also testified that when he confronted defendant about the "molestation" defendant admitted that he had in fact molested a young girl.[3]  Then there is the fact that defendant is the father of the victim's child which she gave birth to shortly after her sixteenth birthday.

---

[2] *People v Terrell*, 289 Mich App 553; 797 NW2d 684 (2010).

[3] See footnote 1, *infra.*

Next, we note that the evidence, again presuming it admissible, is merely cumulative. The crux of the defense was that the victim was not believable, and defendant was able to make that defense through the testimony of others, including the mother of the victim. Taken as a whole, the alleged newly discovered evidence does not persuade us that defendant is entitled to a new trial. Our Supreme Court in *Grissom* Court recognized that "it will be the rare case in which impeaching evidence warrants a new trial, because ordinarily such evidence will cast doubt at most on the testimony of only one of the witnesses." *Grissom*, 492 Mich at 314, quoting *United States v Taglia*, 922 F2d 413, 415 (CA 7, 1991). The Seventh Circuit in *Taglia* additionally noted that: "[I]f the government's case rested entirely on the uncorroborated testimony of a single witness who was discovered after trial to be utterly unworthy of being believed because he *had lied consistently in a string of previous cases*, the district judge would have the power to grant a new trial in order to prevent an innocent person from being convicted." *Grissom*, 492 Mich at 315, quoting *Taglia*, 922 F2d at 415 (emphasis added in *Grissom*). That is not the case here, and reviewing all of the evidence presented we are not persuaded that a different result would occur were this Court to afford defendant a new trial. Accordingly, we reject defendant's assertions that he is entitled to a new trial.

Affirmed.

/s/ William B. Murphy
/s/ Henry William Saad
/s/ Stephen L. Borrello