*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROGELIO NASARIO REYNA,

        Defendant-Appellant.

UNPUBLISHED
March 12, 2026
9:07 AM

No. 370499
Van Buren Circuit Court
LC No. 2023-024451-FH

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of delivery of methamphetamine (meth), MCL 333.7401(2)(b)(*i*). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 90 months to 40 years' imprisonment. For the reasons set forth in this opinion, we affirm defendant's conviction and sentence.

## I. BACKGROUND

Between December 2022 and January 2023, an associate of defendant commenced cooperation with law enforcement as a confidential informant (CI) after being apprehended in possession of methamphetamine. The CI identified defendant as his supplier and, in exchange for avoiding prosecution, agreed to participate in three controlled purchases from defendant. Over the course of approximately one month, the CI executed three such transactions: on December 20, 2022; December 27, 2022; and January 20, 2023. Law enforcement and the CI adhered to consistent procedures for each operation. Each transaction occurred within the same county, involved the same monetary consideration, and pertained to comparable quantities of methamphetamine.

Approximately one month after the final controlled purchase, defendant was arrested and charged with three separate counts of delivery of methamphetamine. The prosecution elected to try each count separately. The conviction at issue in this appeal arises from the December 27, 2022, transaction.

Prior to trial, defendant moved to dismiss all three cases on the grounds of entrapment. The trial court denied the motions, concluding that none of the substantive elements of entrapment were established.

Defendant first proceeded to trial on the charge pertaining to the December 27 transaction. The prosecution did not present evidence of the other controlled buys. Instead, the prosecution presented testimony only from the CI, the lead detective, and the laboratory technician who analyzed the methamphetamine. Defendant's main argument throughout his first trial was that the CI already had the meth, so defendant did not actually engage in delivery of meth. In making this argument, defense counsel emphasized the lack of testimony from any of the other officers involved in the buy. Particularly, defense counsel argued that, because there was no testimony about how the CI's car was searched, the CI could have hidden the meth from the police in his car. The jury deadlocked, and the trial court declared a mistrial.

Following the mistrial, the prosecution filed a Notice of Intent to Introduce Other Acts and Propensity Evidence pursuant to MRE 404(b). The prosecution contended that evidence of the other two transactions, together with the doctrine of chances, was necessary to establish absence of mistake and a common scheme or plan. The trial court admitted the evidence and permitted reliance on the doctrine of chances, finding that the transactions shared "striking similarities." The court concluded that the evidence was relevant and that its probative value was not substantially outweighed by the risk of unfair prejudice.

Subsequently, the delivery-of-methamphetamine charge relating to the December 27 transaction proceeded to retrial. On this occasion, the prosecution introduced evidence of the two additional controlled buys, including the testimony of all law enforcement officers who participated in any of the three transactions. The trial court provided the jury with the following instruction concerning the admission of evidence regarding the other two controlled buys:

> You've heard evidence that was introduced to show that the Defendant committed crimes for which he is not on trial. If you believe this evidence, you must be very careful only to consider it for certain purposes. You may only think about whether the evidence tends to show that the defendant used a plan, system, or characteristic scheme that he has used before or since. *And that because there were a series of similar incidents it's less probable that the charges in this case arise out of a mistake on the part of the police or deception on the part of the informant.* (emphasis added).
>
> You must not consider this evidence for any other purpose. For example, you must not decide that it shows that the Defendant is a bad person or that he's likely to commit crimes. You must not convict the Defendant here because you think he's guilty of other bad conduct. All the evidence must convince you beyond a reasonable doubt that the Defendant committed the alleged crime or you must find him not guilty.

Over defense counsel's objection, the trial court determined that the italicized language quoted above properly explained the doctrine of chances as applied to the specific facts of the present case.

The jury found defendant guilty of delivery of meth, and the trial court sentenced defendant—within the guidelines—to serve 90 months to 40 years' imprisonment. Defendant now appeals.

## II. LEGAL ANALYSIS

On appeal, defendant contends that his conviction must be reversed due to the trial court's alleged errors in admitting highly prejudicial other-acts evidence under the doctrine of chances and also in denying his motion to dismiss on grounds of entrapment. Defendant further asserts that his sentence is unconstitutionally disproportionate and should be vacated. We examine each of defendant's assertions.

### A. MRE 404(b) AND DOCTRINE OF CHANCES

In his appeal, defendant asserts that the admission of other-acts evidence, i.e., the evidence of the other two controlled buys, combined with the jury instruction on the "doctrine of chances" denied him a fair trial. Specifically, defendant argues, the other-acts evidence was unfairly prejudicial because it was unnecessarily cumulative and unreliable. And the prosecution misused the "doctrine of chances" because it has only been allowed to rebut a defendant's claim that his own conduct was accidental. Lastly, defendant alleges, because the other-acts evidence and "doctrine of chances" instruction were not presented at the deadlocked trial, the fact that they were presented in the trial that led to defendant's conviction suggests that their inclusion was an outcome-determinative error and reversal is required.

We review this preserved evidentiary error for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019); see also MRE 103(a)(1). "A trial court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017).

Generally, "evidence of other crimes, wrongs, or acts of an individual is inadmissible to prove a propensity to commit such acts." *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998), citing MRE 404(b). However, this evidence may be admissible for other purposes under MRE 404(b)(1), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.[1]

---

[1] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxviii (2023). We rely on the version of MRE 404(b) in effect at the time this matter was decided in December 2023.

Before evidence of other crimes, acts, or wrongs may be admitted, the evidence must pass a four-part test as established by our Supreme Court in *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). See *People v Sabin (After Remand)*, 463 Mich 43, 55-56; 614 NW2d 888 (2000). The test is as follows: (1) the evidence must be offered for a proper purpose under MRE 404(b); (2) the evidence must be relevant; (3) the probative value of the evidence cannot be substantially outweighed by unfair prejudice; and (4) "the trial court may, upon request, provide a limiting instruction to the jury." *VanderVliet*, 444 Mich at 55. In summary, if "the evidence also tends to prove some fact other than character, admissibility depends upon whether its probative value outweighs its prejudicial effect, taking into account the efficacy of a limiting instruction in cushioning the prejudicial effect of the evidence." *Crawford*, 458 Mich at 385.

Defendant does not dispute that the evidence of the other controlled buys was offered for the proper purpose of proving defendant's scheme, plan, or system. We agree because "scheme, plan, or system" is clearly included in MRE 404(b)(1) as a proper purpose. *People v Roscoe*, 303 Mich App 633, 646; 846 NW2d 402 (2014). Accordingly, the first part of the test has been satisfied.

The prosecution also must explain "how the evidence relates to the recited purpose" to justify admission under MRE 404(b). *Crawford*, 458 Mich at 387. Our Supreme Court has emphasized that "logical relevance," i.e., the second part of the *VanderVliet* test is the " 'touchstone' of the admissibility of other-acts evidence." *Denson*, 500 Mich at 401. "Other-acts evidence is logically relevant if two components are present: materiality and probative value." *Id*.

"Materiality is the requirement that the proffered evidence be related to 'any fact that is of consequence' to the action." *Crawford*, 458 Mich at 389. A fact is "of consequence to the action" if it is "directed at an element of the crime or an applicable defense" or if it "is 'in issue' in the sense that it is within the range of litigated matters in controversy." *Sabin*, 463 Mich at 57 (quotation marks and citations omitted). In general, when a defendant denies that he committed the charged offense, all elements of the offense are "in issue." *Crawford*, 458 Mich at 389.

Here, defendant framed his defense as leading the jury to believe that the CI already had the meth and framed defendant by claiming that the meth came from defendant. The prosecution introduced evidence of the controlled buys specifically to counter defendant's framing defense, thereby placing the contested fact at issue. Accordingly, the threshold requirement of materiality under the relevance analysis is satisfied. See, e.g., *People v Mardlin*, 487 Mich 609, 624; 790 NW2d 607 (2010); *People v Starr*, 457 Mich 490, 501; 577 NW2d 673 (1998).

The prosecution is further required to establish the probative value of the other-acts evidence. *Denson*, 500 Mich at 402. Evidence is considered probative if it tends to increase or decrease the probability of a consequential fact in the litigation. *Crawford*, 458 Mich at 389–390. Where the evidence concerns other acts, its probative value must derive from something other than a propensity inference. *Id*. at 390. Absent a cogent logical nexus connecting the prior act to the ultimate inference sought, such evidence must be excluded, even if it is logically relevant to character. *Id*.

Hence, the central inquiry is whether the prosecution met its burden to demonstrate that the defendant's involvement in the other controlled buys establishes an inference—distinct from a propensity inference—that is probative of the two dispositive issues: (1) whether the CI fabricated evidence to frame defendant, and (2) whether defendant delivered meth to the CI. The prosecution advanced two distinct theories of logical relevance to support the probative value of each material fact: the "doctrine of chances" and the theory that it showed defendant's plan, scheme, or system. Defendant only contests the prosecution's use of the doctrine of chances; however, we determine that the prosecution properly relied on both theories.

The doctrine of chances constitutes a theory of logical relevance that operates independently of character inferences. *Mardlin*, 487 Mich at 616. In the context of MRE 404(b), this doctrine elucidates a logical connection—grounded in objective probability—between evidence of prior acts linked to a defendant and legitimate, non-character inferences that may arise from the frequency of such events. *Id*. at 616–617. In principle, as the incidence of anomalous events increases with respect to a particular defendant, the objective probability that the charged act or prior occurrences resulted from mere happenstance or natural causes correspondingly diminishes. *Id*. at 616.

For the doctrine of chances to be properly applied, the prosecution must make a persuasive showing that each uncharged incident bears substantial similarity to the charged offense, and that the defendant has engaged in such incidents with greater frequency than would be expected of an ordinary person. Crawford, 458 Mich at 394. The application of the doctrine is context-dependent and varies according to the issue for which it is invoked. *Mardlin*, 487 Mich at 620. Where the prosecution's theory of relevance is predicated on the asserted similarity between the defendant's other acts and the charged offense, a "striking similarity" between those acts is required for admissibility. *Denson*, 500 Mich at 403; see also *Mardlin*, 487 Mich at 620–622.

Here, the prosecution invoked the doctrine of chances to establish the probative value of the question whether the CI framed defendant. The prosecution contended that the controlled buys were conducted pursuant to uniform procedures, including comprehensive searches of the CI and his vehicle prior to each transaction. The fact that law enforcement uncovered no meth during any of these searches reduced the likelihood that the CI could have concealed meth for the purpose of framing defendant. Given that the prosecution's argument relied on the similarity between the controlled buys and the charged offense, it was incumbent upon the prosecution to demonstrate a "striking similarity" among the acts to satisfy the doctrine of chances. See *Denson*, 500 Mich at 403; *Mardlin*, 487 Mich at 620–622; *Crawford*, 458 Mich at 394–395.

The prosecution offered significant evidence detailing the similarity of each controlled buy. In particular, the police followed the same pre-buy and post-buy procedures for each controlled buy. Further, each buy occurred in the same county, involved the same amount of money, and involved a similar amount of meth. Also, at each buy, defendant and the CI agreed on a time and place to meet; defendant then met the CI at the agreed location, briefly talked with the CI, exchanged the meth for money, and then promptly left. Most importantly, defendant concedes that the buys were similar and fails to demonstrate any significant dissimilarity between the other acts and the charged offense. Further, no significant dissimilarity exists in the record. Accordingly, as the trial court found, there is a clear "striking similarity" between the other

controlled buys and the charged offense. See *Denson*, 500 Mich at 403; *Mardlin*, 487 Mich at 620-622; *Crawford*, 458 Mich at 394-395.

The prosecution also presented sufficient evidence to prove that defendant was involved in all three controlled buys. See *Crawford*, 458 Mich at 394. Importantly, defendant does not contest that he was the person who met the CI during these controlled buys. Further, the prosecution presented photo, video, and testimony evidence that defendant met the CI during these controlled buys. Accordingly, the similarity between the controlled buys and the proof that defendant was involved in each buy provided a sufficient "factual nexus to warrant admission of the evidence under the doctrine of chances." *Id*. at 395-396.

Therefore, under the doctrine of chances, the prosecution properly "weaved a logical thread" to show that, because of the significant similarity of the other controlled buys to the charged offense, it was highly improbable that the CI was able to successfully hide meth from the police officers on three separate occasions considering that the police thoroughly searched the CI and his car before each buy and surveilled the CI to, from, and during each buy. This is a proper noncharacter inference. Further, this inference lends to the objective improbability that the CI framed defendant for the charged offense, or any of the other controlled buys. Accordingly, the prosecution demonstrated that the other-acts evidence had sufficient probative value because it made it less likely that the CI framed defendant.

The prosecution also used the theory of logical relevance that the evidence of the other controlled buys showed defendant's plan, scheme, or system. Our Supreme Court has held that evidence of misconduct similar to that charged is logically relevant to show that the charged act occurred if "the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they were manifestations of a common plan, scheme, or system." *Sabin*, 463 Mich at 63. In other words, the logical relevance of the controlled buys is on the basis of the inference that defendant used a common system in committing the charged offense; therefore, the proof of defendant using the common system is proof that the charged act occurred. See *id*. at 63 n 10. When evidence is offered to prove common scheme or plan, there cannot solely be a general similarity between the charged and uncharged acts; instead, "the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual." *Id*. at 65-66. This theory of logical relevance contains two situations: (1) when the charged and uncharged acts are pieces of a larger plan, and (2) when the defendant used the same plan to commit separate acts. *Id*. at 63-65.

Here, the trial court determined that the evidence of the controlled buys demonstrated the first situation. Specifically, the fact that defendant sold meth to the CI multiple times in a short period suggests that the charged offense was part of defendant's larger plan of routinely selling meth to the CI.

The same facts support either situation under this theory of logical relevance. As discussed earlier, defendant concedes that the buys were similar. Further, the record clearly indicates that the circumstances of each controlled buy were identical. The CI texted defendant about buying meth; defendant and the CI agreed on a time and place (all in the same county); at each buy defendant would approach the CI's car, engage in small talk, and while talking, they would

exchange money for meth; the meth provided by defendant was packaged the same way each time; $60 worth of meth was bought each time, and defendant provided a similar amount of meth in exchange; and defendant left shortly after each buy took place.

The similarities between the controlled buys support the inference that defendant employed the same system, plan, or scheme for the charged offense. Therefore, the evidence of the other controlled buys is relevant because it makes it more probable that defendant delivered meth during the charged offense because he delivered meth to the CI using the same plan as the other buys. Further, as stated by the trial court, the fact that all three buys occurred in a short period suggests that defendant routinely sold meth to the CI. Therefore, the evidence is relevant because it makes it more probable that defendant sold meth to the CI on the date of the charged offense.

The crux of defendant's argument on appeal and in the trial court was that the evidence should have been excluded under MRE 403 because of its prejudicial nature. A trial court may exclude otherwise admissible evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Crawford*, 458 Mich at 398.

As discussed earlier, the evidence of the other controlled buys is clearly relevant, i.e., highly probative of two material facts. However, our Supreme Court has noted that other-acts evidence nearly always carries some amount of prejudice. See *id*. at 384, 398. Therefore, we recognize that the evidence of the other controlled buys certainly carries some prejudice. However, the evidence is still admissible as long as its probative value is not substantially outweighed by the danger of unfair prejudice. *People v Watkins*, 491 Mich 450, 487; 818 NW2d 296 (2012); *Crawford*, 458 Mich at 385; *VanderVliet*, 444 Mich at 55. Our Supreme Court has provided a list of considerations for courts to assess when determining whether other-acts evidence should be excluded:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

Here, defendant concedes the similarity between the prior acts and the charged offense. The temporal proximity is likewise established, as all three controlled buys—including the charged offense—occurred within a single month. Defendant does not assert the existence of any intervening events, nor does the record reveal any such occurrences. These factors, therefore, support admissibility. Moreover, defendant does not contest the necessity of evidence beyond the testimony of the complainant and defendant. Thus, the record amply supports the prosecution's position that other-acts evidence was essential, given that defendant's defense strategy centered on repeated challenges to the confidential informant's credibility and to the competence of the

investigating officers. Accordingly, the necessity of the other-acts evidence was manifest. See *People v Solloway*, 316 Mich App 174, 195-196; 891 NW2d 255 (2016).

Defendant also contends that the evidence supporting the occurrence of the prior controlled buys lacks reliability. Defendant has not made a convincing argument here as our review of the record lacks any factual evidence to support this claim. The CI was subject to continuous law enforcement surveillance before, during, and after each controlled purchase, and was required to adhere to stringent procedural protocols. Under these circumstances, it is improbable that the CI could have acted outside the officers' observation. The CI's testimony unequivocally denied any attempt to frame defendant and affirmed that meth was obtained from defendant during each transaction, as well as on prior occasions. Both the CI and the CI's vehicle underwent thorough searches before and after each controlled buy, and law enforcement consistently testified that no contraband was found before the transactions. Additionally, four police officers provided testimony that was mutually consistent and corroborative of the CI's account and the procedural safeguards in place. This factor likewise supports admissibility.

Finally, the trial court issued a limiting instruction to the jury. "Jurors are presumed to follow the court's instructions, and instructions are presumed to cure most errors." *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017); see also *Weeks v Angelone*, 528 US 225, 234; 120 S Ct 727; 145 L Ed 2d 727 (2000). Thus, any potential for unfair prejudice arising from the admission of other-acts evidence, assuming there was any, was mitigated by the court's instruction. See *Roscoe*, 303 Mich App at 646.

On this record, we conclude that the trial court did not abuse its discretion in admitting evidence of the prior controlled buys and in applying the doctrine of chances. The evidence was proffered for a permissible purpose, was relevant, and its probative value substantially outweighed any risk of unfair prejudice. Furthermore, the trial court provided an appropriate limiting instruction. Accordingly, the admission of the evidence was proper. Defendant is not entitled to relief on this issue.

## B. ENTRAPMENT

Next, defendant argues that the trial court erred when it denied his motion to dismiss the charge on the basis of entrapment. Defendant argued in the trial court and in his appeal that because the police improperly used defendant's close relationship with the CI to induce defendant into committing a crime, defendant was entrapped. Further, defendant contends that the CI was the one who asked defendant for meth and "was given free rein to target and set up defendant."

A trial court's factual findings concerning entrapment and its ultimate ruling on the issue of entrapment are reviewed for clear error. *People v Jade*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365951); slip op at 6. "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002).

In Michigan, "a defendant is considered entrapped if either (1) the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances or (2) the police engaged in conduct so reprehensible that it cannot be tolerated."

*Jade*, ___ Mich App at ___; slip op at 7 (quotation marks and citation omitted). The focus of the entrapment test is on the nature of the government conduct that resulted in the charges against defendant because "[t]he purpose of the entrapment doctrine is to deter unlawful government activities and preclude the implication of judicial approval of impermissible government conduct." *Id*. (quotation marks and citation omitted). However, "if law enforcement officials present nothing more than the opportunity to commit the crime," then there is no entrapment. *Id*. (quotation marks and citation omitted). Further, defendant "has the burden of establishing by a preponderance of the evidence that he was entrapped." *Johnson*, 466 Mich at 498.

Here, the trial court, defendant, and prosecution all agree that the police did not engage in conduct "so reprehensible that it cannot be tolerated." Accordingly, the only question we must address is whether "the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances." *Id*.

> When examining whether governmental activity would impermissibly induce criminal conduct, several factors are considered: (1) whether there existed appeals to the defendant's sympathy as a friend, (2) whether the defendant had been known to commit the crime with which he was charged, (3) whether there were any long time lapses between the investigation and the arrest, (4) whether there existed any inducements that would make the commission of a crime unusually attractive to a hypothetical law-abiding citizen, (5) whether there were offers of excessive consideration or other enticement, (6) whether there was a guarantee that the acts alleged as crimes were not illegal, (7) whether, and to what extent, any government pressure existed, (8) whether there existed sexual favors, (9) whether there were any threats of arrest, (10) whether there existed any government procedures that tended to escalate the criminal culpability of the defendant, (11) whether there was police control over any informant, and (12) whether the investigation was targeted. [*Id*. at 498-499.]

The record reveals that the trial court rendered findings as to each of the twelve entrapment factors, concluding that none supported a finding of entrapment. On appeal, defendant contends that law enforcement improperly exploited defendant's personal relationship with the CI; that the CI was the initial actor in the controlled purchase and that, absent the CI's solicitation, defendant would not have delivered methamphetamine; that the CI operated with undue autonomy in targeting and orchestrating defendant's involvement; and that the police lacked prior knowledge of defendant's criminal propensity prior to the controlled purchases. As such, defendant's appellate challenge is limited to the trial court's determinations with respect to Factors (1), (2), (4), (7), (10), and (11).[2]

---

[2] Defendant does not contest the trial court's factual findings regarding Factors (3), (5), (6), (8), (9), and (12), and our review reveals no clear error in the trial court's determination that these factors weigh against a finding of entrapment.

First, the mere existence of a friendship between the CI and defendant does not support a finding of entrapment, as law enforcement did not instigate the relationship between the two. *People v Juillet*, 439 Mich 34, 64; 475 NW2d 786 (1991). The CI's testimony established that defendant regularly supplied him with methamphetamine prior to the controlled buys, having conducted at least ten such transactions. There is no evidence in the record suggesting that the CI exploited their friendship to elicit sympathy or otherwise induce criminal conduct. Both the CI and the lead detective confirmed that, at no time before or during the controlled purchases, did the CI invoke the personal relationship as a means to procure methamphetamine. Accordingly, Factor (1) weighs against a finding of entrapment.

Defendant further contends that he was not known to engage in the charged criminal conduct because law enforcement had no prior familiarity with him before the controlled purchases. The record belies this assertion. The record demonstrates that the CI identified defendant as his methamphetamine supplier, and law enforcement independently corroborated this information. The lead detective's testimony established that defendant had two prior convictions for delivery of controlled substances and was identified as a dealer by other informants known to law enforcement. Additionally, the CI confirmed multiple prior methamphetamine purchases from defendant. These facts collectively establish that defendant was known to engage in the charged offense, supporting the trial court's assessment that Factor (2) weighs against a finding of entrapment.

Defendant also asserts that the CI induced the methamphetamine transaction by initiating contact and requesting drugs. While it is undisputed that the CI initiated the transaction, the record is devoid of evidence that the CI's requests constituted any inducement rendering the commission of the offense unusually attractive to a hypothetical law-abiding citizen. *Johnson*, 466 Mich at 498-499. Both the CI and the supervising officer testified that communications between the CI and defendant concerned only routine logistical details such as timing, location, and quantity. There is no indication that any improper inducement was offered, and defendant has identified no such evidence. The record reflects a straightforward transaction: the CI requested methamphetamine, defendant agreed, and a standard exchange occurred. A law-abiding individual, if similarly approached, would not have acquiesced. Accordingly, Factor (4) weighs against a finding of entrapment.

In a similar vein, there is no evidence that governmental action exerted undue pressure on defendant or implemented procedures that heightened his criminal liability. The record reveals that the CI contacted defendant on only three occasions over the course of a month, each time seeking to purchase a modest quantity of methamphetamine. There is no suggestion that the CI persistently solicited defendant after any refusal. Rather, on each occasion, defendant willingly agreed to the transaction and fulfilled the delivery. As previously discussed, the CI also testified to at least ten other methamphetamine transactions with defendant. Accordingly, Factors (7) and (10) weigh against a finding of entrapment.

Finally, defendant contends that the CI was afforded unrestricted discretion to target and entrap him. Again, the record belies this assertion. Rather, law enforcement maintained substantial oversight and control over the CI's activities. As previously noted, while the CI identified defendant as a potential dealer, police independently corroborated this information and

did not rely solely on the CI's representations. Thus, the assertion that the CI operated with "free rein" is erroneous.

Moreover, law enforcement implemented comprehensive procedures to curtail any possibility that the CI could independently "set up" defendant. A detective was present during the CI's initial contact with defendant to arrange the transaction. Multiple officers conducted pre-buy searches of the CI and his vehicle for contraband, provided the funds for the transaction, and prohibited the CI from using personal funds. The CI was equipped with a recording device that documented both the transit and the transaction itself, and law enforcement maintained constant surveillance throughout. The CI was barred from making any unsupervised stops and was required to immediately surrender the purchased methamphetamine. Post-buy, the CI and his vehicle were re-searched. These procedures directly refute defendant's claim of CI autonomy. As the trial court noted, the operations were "extremely supervised," precluding any credible argument to the contrary. Accordingly, Factor (11) also weighs against a finding of entrapment. Following review of the record evidence, for the reasons stated above, we concur with the trial court's conclusion that defendant was not entrapped.

## C. PROPORTIONALITY OF SENTENCE

Defendant argues that his sentence was disproportionate and unreasonably harsh because the sentencing guidelines did not consider the mitigating circumstances of defendant's background. Defendant suffered with drug addiction that influenced his criminal history, and his parents were divorced when he was young, and he frequently moved around. In addition, defendant delivered a very small amount of meth, defendant received no sentencing credit, and defendant will receive access to reentry resources. Further, defendant argues, the guidelines range for his conviction was so large that it should be entitled to less weight.

We review the proportionality of a trial court's sentence for abuse of discretion." *People v Teike*, 348 Mich App 520, 537; 19 NW3d 733 (2023) (quotation marks and citation omitted). An abuse of discretion occurs when a sentence violates the principle of proportionality. *Id*. "[T]he principle of proportionality simply requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 537-538 (quotation marks and citation omitted). See also *Graham v Florida*, 560 US 48, 59; 130 S Ct 2011; 176 L Ed 2d 825 (2010).

A trial court has the authority to sentence a defendant within the range of sentencing outcomes assigned by the Legislature for a given conviction. *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). The trial court has a duty to exercise discretion in a way that ensures that the sentence is "tailored to the particular circumstances of the case and offender" and "conforms with the principle of proportionality." *Id*. Specifically, "[a]n appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *Id*. See also *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972).

When a trial court sentences a defendant within the guidelines range, there is a presumption that the sentence is proportionate to the circumstances surrounding the offense and the offender. *People v Posey*, 512 Mich 317, 360; 1 NW3d 101 (2023) (opinion by BOLDEN, J.). However, a defendant may rebut this presumption if he or she presents "unusual circumstances that would

render the presumptively proportionate sentence disproportionate." *People v Ventour*, 349 Mich App 417, 430; 27 NW3d 660 (2023) (quotation marks and citation omitted). "Unusual means uncommon, not usual, rare." *Id*. (quotation marks and citation omitted).

Here, the trial court imposed a sentence of 90 months to 40 years' imprisonment, consistent with the sentencing guidelines range of 72 months to 40 years, as enhanced by defendant's fourth-offense habitual offender status. MCL 777.13m; MCL 777.63; see also MCL 777.21(3)(c). Defendant does not challenge the calculation of the guidelines range or assert that the imposed sentence falls outside of that range. Nor does defendant allege the trial court relied on inaccurate information. Accordingly, the sentence is presumed to be proportionate, and defendant bears the burden of demonstrating unusual circumstances sufficient to rebut this presumption. See, *Posey*, 512 Mich at 357; *People v Powell*, 278 Mich App 318, 323, 750 NW2d 607 (2008).

On appeal, however, defendant does not acknowledge this Court's established jurisprudence requiring that a defendant challenging the proportionality of a within-guidelines sentence must identify unusual circumstances sufficient to overcome the presumption of proportionality, nor does he allege the existence of such circumstances. *Ventour*, 349 Mich App at 430. Instead, defendant contends that his sentence is disproportionate in view of his substance abuse history, adverse childhood experiences, and the absence of sentencing credit. He further asserts that the breadth of the sentencing guidelines range warranted less deference by the trial court. Defendant also suggests that access to reentry resources would ensure that a lesser sentence would still accomplish the aims of punishment, deterrence, and societal protection. Finally, he claims that the sentence is disproportionate to the offense because it involved only a minimal quantity of drugs.

Defendant cites no authority holding that any of the factors he advances constitute "unusual circumstances." To the contrary, several of these factors are inherently common. The denial of sentencing credit—resulting from defendant's commission of the offense while on parole—is a routine consequence for all similarly-situated defendants. See MCL 791.238(2). Likewise, defendant's critique of the breadth of the sentencing guidelines applies universally to offenses of this nature. See MCL 777.21; MCL 777.66. The availability of reentry resources is similarly unremarkable, as such resources are accessible to all returning citizens. In the absence of caselaw deeming any of the cited circumstances as unusual, defendant has failed to rebut the presumption of proportionality.

Moreover, the additional circumstances cited by defendant—including the minimal drug quantity, substance abuse history, and adverse childhood background—are neither uncommon nor unknown to the trial court, as they were detailed in the presentence investigation report or otherwise addressed during sentencing. Despite the presence of these potential mitigating factors, the trial court properly found that defendant's persistent failure to comply with rehabilitative efforts, repeated parole violations, and criminal history—including offenses involving controlled substances, domestic violence, and accosting children—warranted imposition of a sentence within the recommended guidelines range.

Accordingly, the trial court did not abuse its discretion in imposing a minimum sentence at the lower end of the recommended guidelines range. Thus, for the foregoing reasons,

defendant's conviction and sentence are affirmed.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick